## NORTHERN PAC. R. Co. *v.* NICKELS.

*(Circuit Court of Appeals, Eighth Circuit. May 23, 1892.)*

### No. 49.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE — COUPLING CARS—DISREGARD OF RULE.

The mere disregard by an employe of a rule of a railroad company in relation to the coupling of cars, when, with the knowledge and acquiescence of the division superintendent of the road, such employe, and others coming under the rule, have constantly and without exception disregarded it, is not such negligence on the employe's part as will absolutely defeat his recovery for an injury caused by the negligence of the company.

2. SAME—DISREGARD OF RULE—ACQUIESCENCE BY COMPANY.

Evidence is admissible in such case to show that the rule had been disregarded with the knowledge and acquiescence of the division superintendent, even where the employe had signed a paper which set out the rule, and which contained a notice that all rules of the company would be violated at the risk of the employe, and that all such violations, whether habitual or otherwise, were not consented to or acquiesced in by the company.

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

A switchman undertook on a dark night, in accordance with the order of the yard master, to couple a moving freight car propelled by an engine with defective cylinders. He carried his lantern on one arm, and, when the moving car was about eight feet distant from the stationary car, he stepped in between the rails, grasped the link attached to the moving car, and walked back towards the stationary car until he came within about 18 inches of it, when the defective cylinders of the engine emitted such unusual volumes of steam that he could not see anything. He immediately dropped the link, and started to escape. As he did so, he raised his arm, and the deadwoods caught and crushed his wrist. He saw the double deadwoods on the moving car as he stepped in front of it, but, owing to the darkness, could not see them on the stationary car, and did not know that there were double deadwoods on that car until they caught his wrist. *Held*, that the facts did not so clearly prove contributory negligence on the part of the switchman that it was the duty of the court below to give the jury a peremptory instruction in favor of the defendant.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by H. W. Nickels against the Northern Pacific Railroad Company for personal injuries. Verdict and judgment for plaintiff, and defendant brings error. Affirmed.

*Tilden R. Selmes,* for plaintiff in error.

*F. D. Larrabee,* for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges.

SANBORN, Circuit Judge. H. W. Nickels, who was the plaintiff below, brought an action against the Northern Pacific Railroad Company for personal injury, which he alleged was caused by the corporation's negligence. The defendant corporation denied its negligence, pleaded that the plaintiff, Nickels, had been guilty of negligence that contributed to his injury, and that he had agreed to be bound by, and had then violated, the rule of the company set forth below. The plaintiff had been an employe of the defendant from June 26, 1889, until December 16, 1889, when he was injured, and during this time had served, sometimes as brakeman and at other times as switchman, in the yard at Glendive. On the 12th day of November, 1889, he signed and delivered to the defendant a writing entitled a "personal record," consisting principally of questions and answers relative to his age, residence, former occupations, and general qualifications for the position of brakeman, from which the following is an extract:

"(13) Have you read and do you understand the following abstract from the Book of Rules of the Northern Pacific Railroad Company? Yes. 'Caution as to personal safety. (25) Great care must be exercised by all persons when coupling cars. Inasmuch as the coupling apparatus of cars or engines cannot be uniform in style, size, or strength, and is liable to be broken, and as from various causes it is dangerous to expose between the same the hands, arms, or persons of those engaged in coupling, all employes are enjoined before coupling cars or engines to examine so as to know the kind and condition of the drawheads, drawbars, links, and coupling apparatus. * * * Coupling by hand is strictly prohibited. Use for guiding the link a stick or pin. Each person having to make couplings is required to provide a proper implement for the purpose above specified. * * * All will be held responsible.' (14) Do you agree to comply with all the requirements of the foregoing rule in case you enter into the company's employ? Yes. (15) You are notified that, if you or any other employe chooses to violate the requirements of any other rules contained in the Book of Rules of the Northern Pacific R. R. Company, you do so solely at your own risk. The company expects you and all other employes to comply strictly with all its rules and regulations, and does not and will not in any case acquiesce in or consent to any violation of them. Do you understand that all violations of the rules of the company by you or any other employe of the company, whether habitual or otherwise, are not consented to or acquiesced in by the company? Yes."

Over the objection of the defendant, the court below permitted the plaintiff and others, who had been employed as brakemen by the defendant, to testify that none of the employes of that corporation engaged in coupling cars had, so far as their knowledge extended, ever used a stick or pin in coupling them; that those engaged in this work at Glendive, where the accident happened, had constantly coupled the cars without its use, and that the division superintendent of the corporation, whose office was in the upper story of the depot, in the center of this yard at Glendive, had frequently seen the employes thus coupling without sticks, and made no complaint or objection; and upon this subject the court charged the jury that it was a question of fact for them to determine from all the evidence whether this rule, requiring the use of a

stick or pin in coupling the cars, was in force at the time of the accident, and that if they found it was not in force, the plaintiff could not be deemed guilty of contributory negligence because he failed to comply with this rule.

On the 13th day of December, 1889, plaintiff commenced to work as a switchman in the railroad yard at Glendive, under the direction of the yard master, with an engine that was so defective that unusually large volumes of steam constantly escaped from its cylinders and enveloped the engine and some of the cars. On the next day, and again on the succeeding day, he notified the yard master of this defect, and the danger from it, and protested against working with it. The yard master communicated the notice and complaint to the master mechanic, and requested the plaintiff to continue at his work, promising on one day that he would see if he could get the engine repaired, and on the next day that they should have a new engine very soon. About 9 o'clock in the evening of December 16th, as the yard master's crew was making up a freight train, he directed the plaintiff to couple a car that this defective engine was moving back, about as fast as a man would walk, to a stationary car it was approaching. Both these cars were furnished with double deadwoods, that is, cast-iron projections, 8 inches square, about 8 inches above the draw-bar, and about 18 inches distant from it on each side thereof, so constructed that, as soon as the drawbars of the approaching cars touched, the double deadwoods would strike each other. The night was dark. Plaintiff carried his lantern on one arm, and, when the moving car was about 8 feet distant from the stationary car, he stepped in between the rails, grasped the link attached to the moving car, and walked back towards the stationary car, until he came within about 18 inches of it, when the defective cylinders of the engine emitted such unusual volumes of steam that he could not see anything. He immediately dropped the link, and started to escape. As he did so, he raised his arm, and the deadwoods caught and crushed his wrist. Plaintiff knew that foreign freight cars sometimes had double deadwoods, and that it was his duty to look out for them. He saw them on the moving car as he stepped in front of it, and looked for them on the stationary car, but, owing to the darkness, could not see them when he stepped in and started towards them, and did not see them before the steam blinded him, and did not know there were double deadwoods on that car until they caught his wrist. Cars with double deadwoods can be safely coupled, if there is nothing to obscure the light so that the switchman can see their location, by reaching under them with the right hand to guide the link, and over them with the left hand to drop the pin; but it is far less difficult and less dangerous to couple cars with single deadwoods. The freight cars of the Northern Pacific Railroad Company and of western roads generally are provided with single deadwoods.

On this state of facts defendant's counsel requested the court to instruct the jury to return a verdict for the defendant. This request was refused, plaintiff had a verdict, and this refusal is assigned as error.

It was the duty of the defendant railroad company to use ordinary care to supply its employes with reasonably safe machinery and appliances with which to operate its railroad, and to use due diligence in keeping the machinery furnished in proper repair. There is ample and convincing evidence to sustain the conclusion, to which the jury must have arrived, that the corporation failed in the performance of this duty, and that its culpable negligence in continuing in service this defective engine, after repeated notices of its defects and warnings of the dangers of its use, resulted in the emission from its cylinders of the unusual volumes of steam that enveloped and blinded the plaintiff at the critical instant when the cars came together, and caused the loss of his hand. Indeed, this was conceded on the argument, and the only questions for consideration have reference to the alleged contributory negligence of the plaintiff. Here two questions are presented:

"*First.* Is the mere disregard by an employe of a certain rule of a railroad company such negligence on the part of such employe as will absolutely defeat his recovery for an injury caused by the negligence of the corporation, when, with the knowledge and acquiescence of the superintendent in sole charge of the operation of a great division of a railroad comprising hundreds of miles, such employe, and all others to whom the rule applies, have, prior to the accident, constantly and without exception disregarded it?

"*Second.* Do the facts of this case so clearly prove contributory negligence on the part of the plaintiff that it was the duty of the court below to give the jury a peremptory instruction in favor of the defendant?"

1. Regarding the first question, it must be borne in mind that the plaintiff had acted as brakeman and switchman on defendant's railroad for about six months when this accident happened; that he had constantly disregarded this rule; that he had never used a stick or pin to couple cars; that all the other employes with whom he was associated had constantly disregarded it; that the evidence is that no witness ever saw any one obey the rule or use a stick or pin to couple cars on this railroad in a single instance; that during several weeks this plaintiff had been thus coupling cars without a stick in the railroad yard at Glendive, where he was injured, immediately under the eye of Mr. Marsh, the superintendent of the Yellowstone Division of this railroad, who "was the only officer having control of the operation of that part of the road" upon which the plaintiff was working at Glendive; that the office of this superintendent was in the upper story of the depot building, which stands in the center of the railroad yard at Glendive; and that this superintendent had repeatedly seen these employes coupling cars without sticks or pins to guide the links. Here was competent evidence of the knowledge and acquiescence of this division superintendent, who had sole control of the operation of that part of this road, in the complete disregard of the rule. That his knowledge and acquiescence were the knowledge and acquiescence of the defendant company cannot admit of doubt, for he was the only officer in control of the operation of the road on that great division. The court below submitted the evidence of these facts to the jury as tending to show that this rule was not really in force at the time of the accident, with instructions to the effect that, if they found it was not in

force, its disregard by the plaintiff might not be contributory negligence; but that if they found it was in force, and the plaintiff's disregard of it contributed to his injury, he could not recover. There are some deci-. sions in the books holding that the habitual and customary disregard of such a rule as that in question by brakemen and switchmen is not sufficient to prove a waiver or abandonment of the rule by the corporation, where it was not proved that the officer of the corporation in charge of its enforcement knew of or acquiesced in its disregard. But in the case at bar the utter and total disregard of this rule was proved to be known to the very officer who, if any one was, must have been charged with the enforcement of this rule on his division of this railroad. The disregard or violation of the rule was not merely habitual,—customary,— it was complete. The evidence of the witnesses is that none of them ever saw one instance in which the rule was complied with on the de- ·fendant's railroad. To hold that this defendant company could make this rule on paper, call it to plaintiff's attention, and give him written` notice that he must obey it and be bound by it on one day, and know and acquiesce without complaint or objection in the complete disregard of it, by the plaintiff and all its other employes associated with him, on every day he was in its service, and then escape liability to him for an injury caused by its own breach of duty towards the plaintiff because he disregarded this rule, would be neither good morals nor good law. Actions are often more effective than words, and it will not do to say that neither the plaintiff nor the jury were authorized to believe from the long-continued acquiescence of the defendant in the disregard of this rule that it had been abandoned,—that it was not in force. The evidence of such abandonment was competent and ample, and the ruling and charge of the court below on this subject were right. *Barry* v. *Railway Co.*, 98 Mo. 62, 11 S. W. Rep. 308; *Smith* v. *Railway Co.*, 18 Fed. Rep. 304; *Schaub* v. *Railway Co.*, (Mo. Sup.) 16 S. W. Rep. 924.

But defendant's counsel contends that evidence of the waiver or abandonment of this rule was not competent or material, because by the writing he signed on November 12, 1889, he had agreed to comply with this rule, and that he would take upon himself alone all risk of its violation. There is some doubt whether this writing, under the evidence in this case, rises to the dignity of a solemn contract, made for a valuable consideration. It is styled "personal record," and consists very largely of questions and answers relative to the qualifications of plaintiff to serve as a brakeman. It is dated November 12, 1889, and is alleged to have been made in consideration of the employment of plaintiff by defendant at a subsequent date, but the evidence discloses the fact that he was employed by defendant June 26, 1889, more than four months before this paper was signed, and that he remained in defendant's service continually from that date until he was injured; so that it would seem that this writing could not be successfully claimed to be proof of anything more than notice to the plaintiff of the existence of the rule in this particular case. But if it was a contract, it is clear that

it could not bar the plaintiff from proving a waiver or abandonment of the rule. This writing was prepared by the defendant. All the plaintiff had to do with it was to answer the questions and sign his name. It contained in it these words:

"The company expects you and all other employes to comply strictly with all its rules and regulations, and does not, and will not in any case, acquiesce in or consent to any violation of them. Do you understand that all violations of the rules of the company by you or any other employe of the company, whether habitual or otherwise, are not consented to or acquiesced in by the company? Yes."

There are at least two parties to every contract, and this provision was a representation and a contract on the part of the defendant that it did not and would not acquiesce in the violation of any of its rules. The plaintiff signed the contract and proceeded with his service. He must have immediately discovered that if there really was any rule about the use of sticks and pins in coupling cars it was constantly violated on this railroad; that the defendant knew of this violation, and acquiesced in it. This uniform and constant acquiescence of the defendant in the violation of this rule, if such a rule was really in existence, was a violation of the contract on the part of the defendant that it did not and would not acquiesce in the violation of any of its rules, and relieved plaintiff from further compliance therewith; and if, on the other hand, the rule was not really in force, if it had been waived or abandoned, the utter disregard of the rule, and defendant's acquiescence therein, were competent evidence of the abandonment. In either case the plaintiff had a right to rely on the conduct of the defendant, and to introduce his evidence in this behalf.

2. The second question for determination is, did the evidence so clearly prove that the plaintiff was guilty of contributory negligence that the court below should have given a peremptory instruction in favor of the defendant? It was plaintiff's duty to exercise reasonable care, commensurate with the dangerous character of his occupation, to protect himself from injury. He could not recklessly expose himself to a known danger, and then recover from the defendant for an injury to which such exposure contributed. The contention of defendant's counsel is that it was the duty of the plaintiff, in the exercise of ordinary care, to examine the stationary car, and know whether there were double deadwoods on it, before he stepped in between the rails to make the coupling; that the plaintiff testified that the first step in coupling cars was to set the pin, and the pin was in the stationary car; that, if plaintiff had first stepped to the stationary car and set the pin, he would have discovered the double deadwoods on that car, and would not have been injured; that in stepping in between the rails and grasping the link of the moving car when it was eight feet distant from the stationary car he was not in the act of coupling the cars or in the line of his duty, but was carelessly exposing himself to injury; and that by this unnecessary and reckless exposure he contributed to his own injury. It is a general rule that, if reasonable and fair-minded men of

ordinary intelligence may differ as to the conclusion to be drawn from a given state of facts, the question of negligence is for the jury to determine from the facts and all the surrounding circumstances. Can it be said that fair-minded men of ordinary intelligence would agree that there was any want of reasonable care on plaintiff's part in stepping in front of the moving car and grasping the link to guide it into the slot when it was only eight feet distant from the stationary car, and the plaintiff had been directed by his superior, the yard master, to make the coupling under the circumstances of this case? Cars cannot be coupled when both are stationary; they cannot be coupled after the moving car strikes the stationary car, save by a renewed endeavor. At some time while one of the cars is moving the link must be seized and guided. This car was moving four miles an hour, and would traverse the space of eight feet in less than two seconds.

Again, defendant's counsel bases his contention that plaintiff was negligent and out of the line of his duty in stepping in and grasping the link before he set the pin upon his testimony that the first thing to do in coupling a car is to set the pin. That statement, however, cannot be held to so conclusively prove that it was negligence to seize the link before setting the pin as to authorize a court to take this question of negligence from the jury on that account. Indeed, the entire testimony of this witness shows that this statement of his was not sufficient to conclusively prove that any prescribed order of handling link and pin was the only careful or the safest method of handling them in coupling the cars. At another time, while testifying, he said:

"Coupling cars, generally you take the link of the moving car. * * * When you leave a car, you leave the pin standing up in the hole, and when you come to make the coupling you take this link, and you place the pin in the other car so it will fall, and then when this link comes in there you raise it up, and direct it this way into the slot of the other drawbar, and when the cars come together the pin falls into the link."

But perhaps the most conclusive answer to defendant's counsel is that, if plaintiff had first stepped to the stationary car and set the pin, and then waited for the coming car, while he would have discovered the double deadwoods on the stationary car, the blinding steam would in all human probability have obscured his vision before the moving car came near enough for him to discover the double deadwoods on that car, and he would have suffered the same, or a much more serious, injury.

Under the evidence in this case no court would be authorized to declare the plaintiff guilty of negligence that contributed to his injury, and the judgment is affirmed.