RAILROAD  v.  REAGAN.

(*Nashville.*  January  30,  1896.)

1. VERDICT.  *Supported by the facts, when.*

The facts set out in the opinion are held sufficient to support a
verdict of $1,500 in favor of a brakeman, for injury to his hand
sustained while uncoupling cars, by reason of the broken and
dangerous condition of the follower plates and springs of the
drawbars.  (*Post, pp. 130–133.*)

2. EVIDENCE.  *Objection to form of question.*

The action of the trial Judge affords no cause for reversal when
he sustains an objection to the form of question propounded to
a witness, and then suggests the form of question that may be
properly asked, which is answered without objection.  (*Post,
p. 133.*)

3. SAME.  *General exception insufficient.*

It is not error for the Court to admit evidence over a general ex-
ception unless it is incompetent for any and all purposes.  (*Post,
p. 134.*)

4. SAME.  *Brakeman as an expert.*

It is competent to prove by an experienced brakeman, as an ex-
pert, his opinion and that of other skilled brakemen, as to the
proper method of uncoupling cars, to rebut the charge that the
plaintiff's injuries resulted from his pursuing an improper
method in uncoupling cars and not from defects in the coup-
ling apparatus.  (*Post, pp. 133, 134.*)

Cases cited and approved: 38 Ga., 409; 41 Am. & Eng. R. R. Cases,
362.

5. AMENDMENT.  *Of declaration properly allowed, when.*

Where plaintiff's cause of action existed at common law, inde-
pendently of statute, it is not error for the Court to permit him,
over defendant's objection, to amend his declaration after the
evidence is concluded and before the jury are charged, by
striking out the mistaken and superfluous averment that his

Railroad *v.* Reagan.

cause of action had arisen under the statutes and decisions of another State. (*Post, pp. 136, 137.*)

Case cited: Railroad *v.* Sprayberry, 9 Heis., 852.

6. ACTION. *For injury sustained in another State.*

An action lies in the Courts of this State against a wrongdoer for an injury inflicted in another State. (*Post, pp. 136, 137.*)

7. RAILROADS. *Duty of inspection of cars.*

The duty of a railroad to exercise ordinary care to discover and remedy defects in cars that might prove dangerous to its employees, applies, without any relaxation, to loaded cars received from other companies for transportation. (*Post, pp. 134, 135.*)

Cases cited and approved: 100 N. Y., 462; 24 Am. St. Rep., 194.

8. SAME. *Duty as regards rules.*

It is the duty of a railroad company not only to promulgate a code of rules for the government of its employees but to enforce their observance. It is the duty of employees to inform themselves as to the printed and posted rules and regulations of the company, and to conform their conduct to them so far as they are reasonable. (*Post, pp. 138–140.*)

9. SAME. *Same.*

The employees of a railroad company may be justified in the nonobservance of its reasonable rules and regulations when they have been habitually disregarded and broken by the employees, with the knowledge and acquiescence and without the protest of the company. But mere disobedience of employees, without the knowledge or acquiescence of the company, will not justify any inference of an abandonment or waiver of its rules and regulations. (*Post, pp. 138–140.*)

10. CHARGE OF COURT. *Repetition by giving request not required.*

The Court does not err in refusing to give special requests which are fully covered by the charge as delivered. (*Post, pp. 137, 138.*)

---

FROM  DAVIDSON.

---

Appeal in error from Second Circuit Court of Davidson County.  CLAUDE WALLER, J.

9—12 P

Railroad *v.* Reagan.

BAXTER SMITH for Railroad.

STEGER, WASHINGTON & JACKSON for Reagan.

McALISTER, J.    The plaintiff below, Lawrence Reagan, recovered a judgment against the railroad company for the sum of fifteen hundred dollars, damages for personal injuries.    The company appealed, and has assigned errors.

The record discloses that the plaintiff, Reagan, was employed by the defendant company as a brakeman, and was engaged in performing service upon a freight train between Hopkinsville, Ky., and the city of Nashville.    The injury occurred at Guthrie, Ky., while the plaintiff was in the act of uncoupling freight cars, and resulted in an injury which has permanently disabled his hand.    The gravamen of the action is that the car sought to be uncoupled was in a defective and dangerous condition in this, that the follower plates and springs of the drawbars were broken.    It was claimed by plaintiff that the defect was not discernible to ordinary observation, but was inside the drawbar and under the train, and was only discoverable by getting down beneath the car and looking up.    There was proof to show that this defective car belonged to the Nashville, Chattanooga & St. Louis Railway, and was attached to defendant's train at Nortonville, Ky., about twenty miles north of Hopkinsville.    It appears that, at Hopkinsville, the train was turned over to a new crew, consisting of Wene, the conductor, the plain-

tiff, Reagan, and several other brakemen. It appears that the conductor of the incoming crew, as well as the conductor of the new crew, were both aware of the defect in the car, but did not inform Reagan of it, nor was he otherwise advised of its condition. There was proof tending to show that it was no part of the brakeman's duty to inspect the follower plates and springs of drawbars before uncoupling; that it was not usual or customary to make such inspection, nor was any rule requiring it enforced by the company. It was further claimed by plaintiff that the drawbar was, to all outward appearances, sound, there being nothing to indicate that it was defective; that it was pulled out, and in the natural position of a drawbar. The plaintiff claims that he was ordered by the conductor to move some cars in front of this defective car, and that, in the execution of the order, it became necessary to uncouple this car; that, in attempting to draw the pin, the drawbar, on account of a broken back follower plate, went under the deadwood, catching his hand, and inflicting the injury.

On the part of the company it was insisted that the cars were in motion when the plaintiff attempted to make the coupling, and that the rules of the company absolutely prohibited an employee from making a coupling under such circumstances. It was also insisted that the rules of the company required the brakemen to inspect the train every time they stopped; that the drawhead in question was

battered on the outside, indicating that it was out of order, and this fact, it is claimed, was patent to the most casual observation. It is further insisted it was gross negligence for plaintiff to attempt the uncoupling without an examination of the car or drawheads. The company also read in evidence a rule requiring the cars to be stopped before an uncoupling should be attempted. The plaintiff claimed that the uncoupling could not be effected without putting the car in motion, so as to give slack, as the . term is used in railroad parlance. The insistence is, that if the train is stationary on a level road or on an inclined grade, the tension of the united cars renders an uncoupling very difficult, if not impracticable, and, in order to facilitate an uncoupling, it is necessary to set the car in motion so as to produce slack—that is to say, a release of the tension. The plaintiff claims, the cars being stationary, he gave a slack signal, so as to enable him to undo the coupling, and there is evidence to show that when plaintiff attempted the uncoupling the motion of the train was very slow. There is also testimony tending to show that the printed rules of the company, forbidding the practice of uncoupling while a train is in motion, had been, with the knowledge of the company, habitually disregarded, and its enforcement long since abandoned. There was evidence also tending to show that the rule of the company requiring the brakemen · to inspect the trains every time they stopped, was never enforced, and was

"more honored in the breach than in the observ-ance." All the controverted questions of fact aris-ing upon the record are, of course, settled by the finding of the jury, and we find ample evidence to sustain the verdict.

The second assignment of error is that the Court erred in permitting the witness, J. W. Peebles, who had formerly been in the service of the company in the capacity of a brakeman, to state that defendant company had never, to his knowledge, enforced a rule requiring a brakeman to inspect the follower plates and springs of drawbars of cars before under-taking to go in and uncouple cars. The only ob-jection interposed by counsel for defendant was to the form of the question which elicited this testi-mony. The Court sustained the objection of de-fendant's counsel. The Court then suggested the form of question that might be asked. This form of question was then propounded to the witness, and answered without objection, so far as the record discloses.

The third assignment is, the Court erred in per-mitting the witness, R. S. Cleveland, to be asked if he waited for the car to stop, or would he go in while the car is moving, to which the witness replied: "Well, it is not necessary for the car to stop." This witness was a former brakeman on this road, and was being examined as an expert in respect of the proper method to undo a coupling. He was asked: "What is regarded among brake-

men of skill as the proper way to do that? You say, 'Give the signal to slack, and then pull the pin.' Now, then, do you wait for the car to stop, or go in while the car is moving?" No specific ground of exception was interposed to this evidence, but only a general objection interposed. This form of exception is not available in this Court unless it appear that the testimony offered was incompetent for any purpose. It is obvious, however, that the evidence was admissible as the opinion of an expert in respect of the art of coupling. "It has been held that the running and management of railways is so far an art, outside of the experience and knowledge of ordinary persons, as to render the opinions of persons skilled therein admissible in evidence." *Railroad Co.* v. *Bailey*, 11 Ohio St., —; *Railroad* v. *Johnson*, 38 Ga., 409; *Grube* v. *Railroad*, 41 Am. & Eng. R. R. Cas., 362.

It is also assigned as error that the Circuit Judge refused the following instruction, submitted by counsel for the company, viz.: "If the proof shows that defendant received Nashville, Chattanooga & St. Louis car, No. 3917, loaded, in its train at Nortonsville, from the Newport News & Mississippi Valley Railroad, in the ordinary course of business, to be transported over defendant's road, defendant was not bound to test its safety, but might have presumed that it was in good condition, if it required close inspection to determine that it was not in good condition." We think this instruction was properly refused. The

fact that the defect was on a foreign car, which the company had received to be transported over its road, did not relieve the company of the duty to see that it was reasonably safe for the use of its employees. It was under the same obligation with reference to an inspection of the cars as is enjoined in respect to its own cars. In the case of *Gotleib* v. *New York Railroad*, the railway was held liable to a freight brakeman who was injured while coupling defective cars which had been received from another railway for transportation over the line. It was ruled in that case that the company, drawing the cars of another company over its road, owes, in reference to such cars, some duty to its employees. It was not bound to take such cars if they are known to be defective and unsafe. It owes the duty of inspection as master, and is, at least, responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. When cars come to it which have defects, visible or discoverable by ordinary inspection, it must either remedy such defects or refuse to take such cars; so much, at least, is due its employees. The employee can no more be said to assume the risk of such defects in foreign cars than in cars belonging to the company.    100 N. Y., 462; *Moore* v. *Railroad Co.*, 24 Am. St. Rep., 194; Patterson's Railway Accident Law.

The contention of the company was that this drawhead was so battered on the outside as to in-

dicate its defective condition, while the conductors of incoming. and substituted crews both admit they were aware of the defect; so there is no room here for the contention, which is implied in this request, that the defect was latent, and not discoverable by ordinary inspection. The plaintiff claims he was not aware of the defect and this fact was not communicated to him by either of the conductors.

The fifth assignment is that the Court erred in permitting plaintiff, after the evidence was concluded and before the jury was charged, to amend his declaration, over objection, by striking out the following language, to wit: "Plaintiff's said cause of action arises under the decisions and laws of Kentucky, and, by these decisions and laws, defendant is liable to plaintiff for said wrongs and injuries." It was held by this Court, in *Nashville & Chattanooga Railroad Co.* v. *Sprayberry*, 9 Heis., that when a right of action unknown to the common law is given by statute and a remedy prescribed, that remedy must be pursued. It was further held that an action for an injury predicated upon the statute of another State, may be brought in this State, but the declaration must aver the statute under which it is brought. It is very obvious that the cause of action set forth in this declaration is not created by any statute, but existed at common law; and, although the venue is laid in Kentucky, the action may be prosecuted in Tennessee, where the wrong-

doer has a *situs*.  Since the right of action existed
at common law, it was not necessary to aver a
Kentucky statute in order to maintain the suit.
The language of the declaration in reference to the
cause of action arising under the decisions and laws
of Kentucky was mere surplusage, and the motion
to strike out was properly allowed by the Circuit
Judge.

The eighth assignment is that the Court erred in
refusing to submit the following instructions to the
jury, to wit: "If the proof shows plaintiff was an
experienced brakeman at the time of the accident,
and there were two ways or methods of pulling a
pin—one a safe way, and the other an unsafe way
—both ways being equally open to plaintiff, and he
adopted the unsafe way of pulling the pin, and was
injured in consequence thereof, he cannot recover in
this action." We think the Circuit Judge had already
given full instructions upon this subject in his gen-
eral charge, viz.: "The defendant insists that, even
if the drawbar was defective, yet the plaintiff him-
self was negligent, and his own negligence occasioned
his injuries.  First, it is insisted that plaintiff was
negligent in the way he took hold of the coupling
pin.  On this point you will take all of the evi-
dence as to the manner which prudent and skillful
men in that business adopted in uncoupling cars, and
thus determine whether plaintiff used that degree of
care which a man of ordinary prudence would have
exercised under similar circumstances.  If he failed

to use such care, he was negligent, and, if such negligence was the cause of the injury, he cannot recover.'' This instruction covered the whole ground, and should not have been supplemented with the special requests asked on behalf of the company.

The fifth, sixth, and seventh assignments of error are based upon the refusal of the Circuit Judge to charge certain requests submitted on behalf of the company on the subject of its rules. The Court had already submitted the rules to the jury, adjudging them to be reasonable regulations, and instructing the jury that, if the violation of either of said rules was the proximate cause of the injury, plaintiff could not recover.

The Court further instructed the jury: ''If you find such rules were printed in a book, and a copy given the plaintiff, it was plaintiff's duty to read them; and, if the rules were pasted on bulletin boards, for the benefit of employees, it was their duty to consult such bulletins. If rules and regulations, reasonable in themselves, were brought to the notice of employees, they cannot be disregarded with impunity. The Court instructs you that the rules already given were reasonable. So that, if you find there was a rule prohibiting brakemen from uncoupling cars while in motion, or, if there was a rule requiring the brakeman, before taking charge of a train, to inspect the coupling appliances of the cars, and such rules were brought to the plaintiff's notice, and, on this occasion, plaintiff had ample time at

Hopkinsville or Guthrie to make such inspection, but failed to do so, and neglected to comply with either of 'said rules, and such neglect was the cause of the injury, then, the plaintiff cannot recover, unless you find that said regulations had been abandoned by the company, and were not enforced by it; for, if you find that the brakemen habitually disregarded them, with the acquiescence and knowledge of defendant company, then the plaintiff might presume such rules had been abandoned, and a violation of them, under such circumstances, by the plaintiff would not, in itself, be such negligence as would defeat his recovery; but still, the mere fact that other brakemen were negligent, and violated said rules without the knowledge or acquiescence of the company, would not relieve the plaintiff from the obligations of a compliance upon his part.''

We have thus quoted in full the instruction of the Circuit Judge, for the purpose of expressing our concurrence in his clear, accurate, and comprehensive statement of the law governing this subject. The instructions given cover every aspect of the case presented in the requests submitted on behalf of the company. It is the duty of a railroad company not only to promulgate a code of rules for the government of its employees, but to enforce their observance. Says Mr. Wood: '' It is the duty of any person or corporation engaged in a complex business to establish and enforce definite regulations for the protection of its employees, and a failure to adopt

such rules, as well as laxity in their enforcement, is recognized as negligence. And a servant may show that certain rules are habitually violated by all the employees with the knowledge of the company." Wood on Railways, Vol. III., p. 1759; Wood on Master and Servant, Sec. 401.

Mr. Bailey, in his work on Master's Liability, while combating the soundness of this rule, admits that it is sustained by numerous cases. "It is generally said," says Mr. Bailey, "that the master will be deemed to have waived a rule promulgated for the servant's own safety when he knows it is generally or habitually violated." Bailey's Master's Liability, p. 62; *Barry* v. *Hannibal & St. Joseph R. R.*, 98 Mo., 62; *Fry* v. *Railroad Co.*, 30 Minn., 234; 58 N. Y., 56; *Alexander* v. *Railroad*, 83 Ky., 590; *Kansas City R. R.* v. *Kier*, 41 Kan., 661; *Union Pacific R. R.* v. *Springsteen*, 41 Kan., 724; *Northern Pacific Ry. Co.* v. *Nickels*, 4 U. S. App., 369; 1 C. C. A., 625; *Railroad* v. *Nickels*, 50 Fed. Rep., 718; *Hannah* v. *Railway Co.*, 154 Mass., 529; *Whittaker* v. *Delaware Canal Co.*, 126 N. Y., 544; 25 Am. & Eng. R. R. Cases, 458; *Alcorn* v. *Railroad*, 108 Mo.; *Railroad* v. *Graham*, 94 Ala.; 3 Lewis on Railroad & Corp. Rep., 411; *Smith* v. *Railway Co.*, 16 S. W. Rep.

So we think a perpetual breach and disregard of the rules by the employees, with the knowledge of the company, amounts to a practical abrogation of the rules.

Affirmed.