JAMES ALFRED WRIGHT, RESPONDENT, v. SOUTH-
ERN PACIFIC COMPANY, APPELLANT.

PERSONAL INJURY—NONSUIT—CONTRIBUTORY NEGLIGENCE — EVI-
DENCE—FELLOW SERVANT—EXCESSIVE DAMAGES.

1. The plaintiff received the injury complained of while in the
employ of defendant, and while acting in the capacity of
switchman in defendant's yards. The engine used in moving
the cars was operated without a fireman, the engineer per-
forming the duties of fireman himself. This fact was known
to the plaintiff, who continued to work without making any
complaint to defendant or to any of its agents. The engine

was defective and required more attention because thereof. Defendant had rules which required switchmen to give signals to the engineer, and to see that the signals were observed and obeyed before going between the cars, and to abstain from going between them while in motion, for the purpose of coupling or uncoupling them. But these rules were constantly violated, not only by the plaintiff but also by the yardmaster, as well as the other switchmen. On the occasion of the accident, the plaintiff gave the engineer the signal to stop, which was obeyed, and then went between the cars to pull the pin; but, being unable to do so, he stepped out, and gave the "slow back up" signal, and, without waiting to see if the signal was obeyed, went between the cars to uncouple them while in motion. The engineer, by a quick movement, bumped the forward cars against the back one. The plaintiff's foot was caught under the brakebeam. He then gave the signal to stop, which not being observed, he was dragged a distance of two or three car lengths until he fell when several trucks passed over and crushed his leg below the knee, causing the injury complained of. When the last signal was given, the engineer was in the act of replenishing the fire, and therefore failed to observe and obey it. Plaintiff's leg was amputated above the knee, and he has been unable to wear an artificial leg. Evidence was introduced tending to show that the accident would not have occurred had there been a fireman on the engine at the time of the accident. *Held*, that the non-suit was properly denied; that plaintiff's knowledge of the fact that defendant operated its engine without a fireman was not of itself sufficient to preclude a recovery; that such a result would not follow unless the want of a fireman caused the operation of the engine to be so obviously dangerous that a man of ordinary care and reasonable prudence would refuse to act as switchman. The plaintiff had the right to rely, at least to some extent, upon the judgment of the defendant's agents, who deemed it safe for the engineer to perform the work of a fireman.

2. An employé, as switchman, assumes the perils and risks ordinarily incident to such employment, including the hazards which observation would bring to his knowledge; but he does not assume the perils occasioned through the negligence of his employer, nor is he bound to anticipate and comprehend all the perils to which he might possibly be exposed because of a

want of a sufficient number of employés to perform the service in safety.

3. The employer has a right to adopt rules for the conduct of business and the safety of the employés; but, in order that such rules may avail the employer in a suit for damages for injuries resulting from a breach thereof, they must not only have been known to the employé, but also their observance must not have been waived by the employer.

4. Where a certain rule of the employer, though established for the safety of the employé, has been habitually disobeyed since its inception, or for a long period of time, in the presence or to the knowledge of the employer, without an attempt to enforce it, or has been disregarded in such manner and for such length of time as to raise the presumption that it was done with his knowledge and approval, the rule will be regarded as abrogated or waived.

5. The question whether, under all the circumstances surrounding the accident, the employé was guilty of negligence which was the proximate cause of the injury, was one of fact for the jury, and not one of law for the court.

6. Whether the employé, at the precise time of the accident, was exercising such care as a reasonable and prudent man, having due regard for his own safety, would have exercised under similar circumstances, or whether he was guilty of contributory negligence in violating a rule of the employer, were questions of fact for the jury to determine.

7. Evidence of a customary disregard of the rule of a railroad company by its employés, with the knowledge and approval of the agents of the company, is competent as tending to show that the rule was abrogated or waived.

8. Where the negligence of the employer and that of a fellow servant combine to produce an injury to a servant, the employer will be liable in damages to the injured servant.

9. Where it is clear, almost beyond reasonable controversy, that the instructions of the court to the jury respecting the question of damages have been disregarded, the supreme court may order a new trial. The same influences which caused the jury to disregard the instructions of the court may have misled them in passing upon other questions in the case.

(No. 691.    Decided Sept. 23, 1896.)

14 UTAH—25

Appeal from the Fourth district court, Territory of Utah. Hon. H. W. Smith, *Judge.*

Action by James A. Wright against the Southern Pacific Company for injuries received while plaintiff was in the employ of defendant as a brakeman. From a judgment for the plaintiff, defendant appeals.

*Marshall & Rayle,* for appellant.

"Knowledge of the condition of things on the part of the servant, and his continuance in the service after such knowledge, exempt the master from all liability to the servant for an injury growing out of the condition of things." *Naylor* v. *Chicago, etc., R. R. Co.,* 53 Wis. 661; *Birmingham, etc., R. Co.* v. *Allen,* 99 Ala. 359; *I. C. R. R. Co.* v. *Swisher,* 53 Ill. App. 418; *Simmons* v. *Chicago, etc., R. R.,* 110 Ill. 341, 347-8; *Stafford* v. *C., B. & Q. R. R. Co.,* 114 Ill. 244, 247; *Hughes* v. *Winona, etc., R. Co.,* 27 Minn. 137, 139, 140; *Mundle* v. *Mfg. Co.,* 86 Me. 400, 406-409; *C., B. & Q. R. Co.* v. *Merker,* 36 Ill. App 196, 213; *I. C. R. R.* v. *Morrissey,* 45 Ill. App. 128, 137; *Ragon* v. *Toledo, etc., R. R. Co ,* 97 Mich. 265; *LaPiene* v. *Ry. Co.,* 99 Mich. 212; *Carey* v. *Sellers,* 41 La. Ann. 500; *Sweeney* v. *B. & J. Co ,* 101 N. Y. 520; *Kaare* v. *T. S & I. Co.,* 139 N. Y. 369, 377; *Cohn* v. *McNulta,* 147 U. S. 238; *Bunt* v. *Gold Mining Co.,* 138 U. S. 483; *Dillon* v. *U. P. R. R.,* 3 Dillon 319; *Kielley* v. *Belcher S. M. Co ,* 3 Sawyer 500; *Gibson* v. *Erie Railway Co ,* 63 N. Y. 449; *DeForest* v. *Jewett,* 88 N. Y. 264; *Sweeney* v. *Berlin & Jones Envelope Co.,* 101 N Y. 520; *Williams* v. *Del. L. & W. Rd. Co.,* 116 N. Y. 628; *Powers* v. *N. Y. L. E. & W. R. R. Co.,* 98 N. Y. 274; *Anthony* v. *Leeret,* 105 N. Y. 591; *Shaw* v. *Sheldon,* 103 N. Y. 667; *Hickey* v. *Taaffe,* 105 N. Y. 26; *Findell* v. *Del. L. & W. Rd. Co.,* 129 N. Y. 669; *McGlynn* v. *Bradie,* 31 Cal. 38, 382.

But there are a number of cases specifically holding that *a servant assumes the patent risk arising from an insufficient number of employés* to assist in connection with his employment, when he consents to engage ad continue in the employment with full knowledge of the limited number of assistants in use, *or of a duplication of work imposed upon one employé by the master* or of the absence of one or more assistants believed to be needed for the work. *Long* v. *Coronado R. R. Co.*, 96 Cal. 273; *Skippe* v. *Eastern Ry. Co.*, 9 Ex. 223; cited 31 Cal. 382; *Atchison T. & S. R. Co.* v. *Schroeder*, 47 Kan. 315; *Southern Kans. Ry. Co.* v. *Drake*, 23 Kan. 1; *Chicago & N. W. Ry. Co.* v. *Donahue*, 75 Ill. 166; *Mad River & L. E. R. R. Co.* v. *Barber*, 5 Ohio St. 542; *International, etc., R. R. Co.* v. *Beasley*, 29 S. W. R. 1121-1122; *Texas & P. R. R. Co.* v. *Rogers*, 57 Fed. 378; *Richmond & D. R. Co.* v. *Mitchell*, 92 Ga. 77, 81; *Schnipp* v. *Central R. R. Co.*, 85 Ga. 595-6.

The following cases illustrate the principle that a railroad employé engaged in coupling or uncoupling cars assumes all obvious risks connected with his employment. *Kohn* v. *McNulta*, 147 U. S. 241; *Tuttle* v. *Milwaukee Ry.*, 122 U. S. 189; *Southern Pac. Co.* v. *Seley*, 152 U. S. 145; *Appel* v. *Buffalo, etc., R. R.*, 111 N. Y. 550; *Spencer* v. *N. Y., etc., R. R. Co.*, 67 Hun 196; *Louisville & N. R. R. Co.* v. *Boland*, 96 Ala. 626; *Dysinger* v. *Cin., etc., R. Co.*, 93 Mich. 646; *Davis* v. *B. &. O. R. R. Co.*, 152 Pa. St. 304; *Louisville & N. R. R. Co.* v. *Gowes*, 85 Tenn. 465; *Toledo, W. & W. Ry. Co.* v. *Black*, 88 Ill. 112; *McLaren* v. *Williston*, 48 Minn. 299; *Scott* v. *Oregon, R. & N. Co.*, 14 Oregon 211; *Day* v. *Toledo, etc., Ry. Co.*, 42 Mich. 523; *Smith* v. *Potter*, 46 Mich 258; *Northern Cent. Ry. Co.* v. *Husson*, 101 Pa. St. 1.

The following cases establish and illustrate the rule that any other servant of a railroad company assumes the risk of the negligence of an engineer employed by

the same company in the conduct of its business: *Randall* v. *Baltimore & O. R. R. Co.*, 109 U. S. 478; *Baltimore & O. R. R. Co.* v. *Baugh*, 149 U. S. 368; *Northern Pac. R. R.* v. *Hambly*, 154 U. S. 355; *Ladd* v. *New Bedford R. R. Co.*, 119 Mass. 412; *Clifford* v. *Old Colony R. R.*, 141 Mass. 564; *Hobbs* v. *A. & N. R. R. Co.*, 107 N. C. 1; *Gormley* v. *Ohio & Miss. Ry.*, 72 Ind. 31; *Porter* v. *Silver Creek, etc., Co.*, 84 Wis. 418; *Houston, etc., Ry.* v. *Rider*, 62 Tex. 267; *Tex. & P. Ry. Co.* v. *Harrington*, 62 Tex. 597; *Gulf, etc., R. R. Co.* v. *Blohn*, 73 Tex. 637; *Blake* v. *Maine Cent. R. R.*, 70 Me. 60.

In the following cases, it is held that one who is injured in coupling or uncoupling cars while in motion, in violation of the rules of the railroad company, is guilty of contributory negligence, which is fatal to his right to recover for a resulting injury. *Pryor* v. *L. & N. R. R. Co.*, 90 Ala. 32; *Richmond & Danville R. Co.* v. *Thomason*, 99 Ala. 471; *Grand* v. *Railroad Company*, 83 Mich. 564, 570–71; *Schaub* v. *Hannibal & St. J. Ry. Co.*, 106 Mo. 74, 92; *Sedgwick* v. *Ill. Cent. Ry. Co.*, 73 Iowa 158, 160; Id. 76; *Johnson* v. *Chesapeake & O. Ry. Co.*, 38 W. Va. 206; *Railway Co.* v. *Smith*, 89 Tenn. 114; *Railway Co.* v. *Rice*, 51 Ark. 468, 477; *Lockwood* v. *Chicago & N. W. Ry. Co.*, 55 Wis. 51; *Sloan* v. *Georgia Pac. Ry. Co.*, 86 Ga. 15; *Loranger* v. *Lake Shore & M. S. Ry. Co.*, 62 N. W. 137.

The duty of compliance with rules is not waived by the mere fact that some controlling official, or the immediate superintendent of the work, has knowledge of the failure to comply, and assents thereto. *Atchison, etc., R. R. Co.* v. *Reesman*, 60 Fed. 370, 378; *Railroad Co.* v. *Langdon*, 92 Pa. St. 21; *Virginia Midland R. Co.* v. *Roach*, 83 Va. 375.

The verdict for damages in the sum of $20,000 was excessive. *Union Pac. R. R. Co.* v. *Millikin*, 8 Kan. 647; *Peri* v. *N. Y. Central, etc., R. R. Co.*, 86 Hun 499; *Holden* v. *Penn. R. R. Co.*, 7 Kulp (Pa.) 52; *Pfeiffer* v. *Buffalo R.*

*Co.*, 24 N. Y. Supp. 90; *Sobieski* v. *St. Paul & D. R. Co.*, 41 Minn. 169; *Tex. & Pac. R. Co.* v. *McAtee*, 61 Tex. 965; *Mo. Pac. R. Co.* v. *Dayer*, 36 Kan. 58.

*Richards & Macmillan*, for respondent.

BARTCH, J.:

This action was brought to recover damages for personal injuries which the plaintiff claims he received through the negligence of the defendant. The trial of the case resulted in a verdict in the sum of $20,000, against the defendant. Upon the hearing of the motion for a new trial, the court reduced that sum to $15,000, and, on plaintiff consenting to the reduction, overruled the motion, and entered judgment accordingly. This appeal was taken from the judgment, and from the order overruling the motion for a new trial.

It appears from the evidence, substantially, that the plaintiff received the injuries complained of on the 11th day of August, 1892, while acting in the capacity of switchman, under the employment of the defendant, in its yards at Carlin, Nev.; that at the time of the accident he was 28 years old, strong, active, and earning $80 per month; that he had been so employed for about a year, and all the time had worked with the same switch engine which occasioned the accident; that the engine was operated without a fireman, the engineer performing the duties of fireman himself during the entire time of plaintiff's employment, which fact was known to the plaintiff, who continued to work without making any complaint to the defendant or any of its agents because the engine was thus being operated; that the engine was defective and at one time during plaintiff's employment was sent to the shop for repairs, but after its return it was still defective in its cylinder, and its flues were leaking, in

consequence of which the engineer was required to give the fire and steam more attention than would have been necessary if the engine had not been defective, but such condition of the engine, and the fact that it required more attention because thereof, were unknown to the plaintiff; that the plaintiff knew the defendant had rules which required him to give signals to the engineer, and to see that such signals were observed and obeyed, before going between the cars, and to abstain from going between them while in motion for the purpose of coupling or uncoupling them; that these rules were constantly violated by the switchmen in the presence of the officers of the defendant, and were not obeyed, it having been the custom and practice to couple and uncouple the cars while in motion, on account of the grade in the yard, which would tighten the links and pins, and render it necessary to get the slack by moving the cars; that the plaintiff was in the habit of coupling and uncoupling the cars while in motion, and likewise other switchmen and the yardmaster did the same thing; that on the occasion of the accident the plaintiff gave the engineer a signal to stop, which was obeyed, and he went between the cars to pull the pin, but, being unable to do so, he stepped out, and gave the "slow back up" signal, and again went in between the cars to uncouple them, when the engineer, by a quick movement, bumped the forward cars against the back one; that thereby the plaintiff's foot was caught under the brake-beam, and, holding onto the rung of the ladder, he gave the signal to stop, which not being observed, he was dragged a distance of two or three car lengths until he fell, when several trucks passed over and crushed his leg below the knee, causing the injury complained of; and that, when the last signal was given, the engineer was in the act of replenishing the fire, and

therefore did not observe or obey the signal. It further appears from the evidence that the plaintiff's leg was amputated about seven inches above the knee; that he has been unable to wear an artificial leg; and that he has suffered much, physically and mentally. There is also evidence which tends to show that the accident would have been averted if a fireman had been on the engine. The complaint contained two causes of action, and, when the plaintiff rested his case, counsel for the defendant interposed a motion for a nonsuit, which motion was sustained as to the second cause of action, and denied as to the first. The evidence above set forth relates to the first cause of action.

The first question on this appeal is raised on the motion for a nonsuit. Counsel for the appellant contend that there was no question of fact which ought to have been submitted to the jury, and that, therefore, the court erred in refusing to sustain their motion as to the first cause of action. They further insist that it is immaterial whether or not it would have been a reasonable precaution for the defendant to have provided a separate fireman for the engine, because the plaintiff knew that there was no such fireman, and accepted the employment as switchman with full knowledge of the manner in which the business in that yard was conducted, without making any objection to the engineer's performing the duties of a fireman. We do not think the plaintiff's knowledge of the fact that the defendant operated its engine without a fireman was of itself sufficient to preclude a recovery. Such a result would not follow unless the want of a fireman caused the operation of the engine in the yard in question to be so obviously dangerous that a man of ordinary care and reasonable prudence would refuse to act as switchman. The evidence fails to show that there

was any such obvious danger, and it may rightfully be
assumed that the agents of the defendant, who had
charge of its operations in that yard, deemed it safe for
the engineer to perform the work of a fireman, in addi-
tion to his duties as engineer; and, under the circum-
stances of this case, the plaintiff had the right to rely, at
least to some degree, upon the judgment of those agents.
Under the evidence shown by the record, we would not
be warranted to hold that the plaintiff was bound to rely
entirely upon his own judgment, and, in opposition to
that of the officers of the defendant, determine that it
was absolutely unsafe to operate the engine without a
fireman, and abandon his employment as switchman. It
is true that, when the plaintiff entered into the employ-
ment of the defendant as switchman in the yards at Car-
lin, he assumed the perils and risks ordinarily incident
to such employment, including the hazards which obser-
vation would bring to his knowledge; but he did not
assume the perils occasioned through the negligence of
his employer; nor was he bound to anticipate or compre-
hend all the perils to which he might possibly be ex-
posed, because of the want of a fireman, or that, on the
occasion in question, the engineer would, at the moment
of danger, replenish the fire of the engine, and fail to
observe the signal to stop.   Ordinary care and reasonable
prudence on the part of the master or employer require
that, for the performance of a particular service, a suffi-
cient number of servants be employed to enable it to be
performed in safety; and the employer and employé are
both bound to exercise such reasonable care as is com-
mensurate with the danger of the service, and that im-
plies such caution, watchfulness, and foresight as care-
ful, prudent persons, engaged in such business, and doing
such service, usually exercise.   The duty on the part of

the employer of providing a sufficient number of competent and proper persons to perform a particular service in safety, is just as imperative as the providing of reasonably safe places and suitable machinery; and the servant does not assume perils occasioned by the neglect of this duty. In the case of *Railway Co.* v. *Herbert*, 116 U. S. 642, Mr. Justice Field, delivering the opinion of the court, said: "The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered as any longer open to serious question." Shear. & R. Neg. § 193; *Hough* v. *Railway Co.*, 100 U. S. 213; *Hawley* v. *Railway Co.*, 82 N. Y. 370; *Railroad Co.* v. *Baugh*, 149 U. S. 368; *Pidcock* v. *Railroad Co.*, 5 Utah 612; *Harrison* v. *Railway Co.*, 7 Utah 523; *Chapman* y. *Southern Pac. Co.*, 12 Utah 30; *Soeder* v. *Railway Co.*, (Mo. Sup.) 13 S. W. 714; *Paulmier* v. *Railroad Co.*, 34 N. J. Law 151.

We are of the opinion that whether or not the defendant was negligent in failing to provide a fireman was, under the evidence as shown by the record, a question of fact for the jury to determine, and not one of law for the court, and that the motion for a nonsuit was properly denied as to the first cause of action.

Counsel for the appellant further contend that the plaintiff was guilty of contributory negligence in attempting to uncouple the cars while they were in motion, and that was done in violation of the rules of the railroad company. The general rule is, doubtless, well settled that, when an employé intentionally and knowingly dis-

regards regulations or rules adopted by the employer for the safety of the employé, the employer is not liable for any injuries which result because of the disobedience of such regulations or rules. This rule, however, admits of some qualifications, as where the employer requires service to be performed in such a manner as to render the violation of a rule necessary, or where he has knowingly permitted or approved its habitual violation, without attempting to enforce it. In order, therefore, that rules for the conduct of business and safety of employés may avail an employer in a suit for damages for injuries resulting from a breach thereof, they must not only have been known to the employé, but also their observance must not have been waived by the employer, nor the existing conditions at the time of the injury have rendered their enforcement and obedience impracticable to perform the services required by the employer. In such cases, as a general rule, the question whether, under all the circumstances surrounding the accident, the employer was guilty of negligence, which was the proximate cause of the injury, is one of fact to be submitted to the jury, and it cannot be determined as a matter of law by the court; and where a certain rule of the employer, though established for the safety of the employé, has been habitually disobeyed since its inception, or for a long period of time, in the presence or to the knowledge of the employer, without an attempt to enforce it, or has been disregarded in such manner and for such length of time as to raise a presumption that it was done with his knowledge and approval, the rule will be regarded as abrogated or waived. In *Railroad Co.* v. *Flynn*, 154 Ill. 448, it was held that the instructions asked by the defendants, that a railroad engineer could not recover for personal injuries resulting from his disregard of a rule that imperfect dis-

play or absence of a certain signal should be regarded as a danger signal, were defective and properly refused, because they failed to "submit to the jury the question whether the violation of the defendants' rule had become so habitual as to raise a presumption that the defendants were aware of and approved it, and also whether, under existing circumstances, it was practicable to observe the rule, and at the same time run the defendants' trains in the time and manner required by them;" there having been sufficient evidence to raise these questions. In *Hayes* v. *Manufacturing Co.*, 41 Hun 407, it was said: "Ordinarily, disobedience of a rule would be negligence; but if the defendant prosecuted the work in a manner that rendered the violation of the rule necessary or probable, or if it suffered and approved its habitual disregard, the rule was inoperative." And it was held error to dismiss the action on account of the contributory negligence of the plaintiff, and that the question of his negligence should have been submitted to the jury. *Fish* v. *Railroad Co.*, (Iowa) 65 N. W. 995; *Sprong* v. *Railroad Co.*, 58 N. Y. 56; *Alexander* v. *Railroad Co.*, 83 Ky. 589; *Railway Co.* v. *Springsteen*, 41 Kan. 724; *Barry* v. *Railway Co.*, 98 Mo. 62.

In the case at bar the evidence shows that in the yards at Carlin it was the practice of switchmen to couple and uncouple cars while in motion, and it appears that they were so coupled and uncoupled in the presence of officers of the defendant, and that the night yardmaster so uncoupled them. Such seems to have been the practice during the entire time of the plaintiff's employment as switchman. There is also evidence which tends to show that there was a grade in the yard which rendered it necessary for the cars to be moved while they were being uncoupled, on account of the links and pins being tightened when they were standing. The defendant had

provided a rule which forbade the coupling and uncoupling of cars while in motion, but there is nothing to indicate that there ever was an effort made to enforce it, although it was constantly being violated in the presence of the agents of the defendant. On the occasion in question the cars were moving about three or four miles per hour. Whether, under the circumstances disclosed by the evidence, the plaintiff, at the precise time of the accident, was exercising such care as a reasonable and prudent man, having due regard for his own safety, would have exercised under similar circumstances, or whether he was guilty of contributory negligence in disobeying the rule referred to, and attempting to uncouple the cars while in motion, were questions of fact for the jury to determine. The plaintiff's disobedience of the rule, under the state of facts shown by the record, did not, as matter of law, preclude his recovery. In *Eastman* v. *Railway Co.*, 101 Mich. 597, it was said: "Stepping between cars while in motion to uncouple them is not, as a matter of law, negligence, but the question is one for the jury." *Lowe* v. *Railway Co.*, 89 Iowa 420; *Ashman* v. *Railroad Co.*, 90 Mich. 567; *Railway Co.* v. *McMahan*, (Tex. Civ. App.) 26 S. W. 159; *Snow* v. *Railroad Co.*, 8 Allen 441; *Fay* v. *Railway Co.*, 30 Minn. 231.

Nor do we think the court erred in admitting evidence to show that it was the custom of the switchmen, in the yard at Carlin, to couple and uncouple cars while in motion. The defendant denied the right of the plaintiff to recover, because of his own negligence in attempting to so uncouple the cars, in disregard of one of its rules. The evidence in question tended to show a waiver of the rule by the railroad company, and was therefore proper and admissible. The law does not prevent parties to a contract from waiving provisions thereof. Such a rule

is reasonable, and, if enforced, will receive the sanction of the courts, as tending to promote the safety of employés. In such event, injuries resulting from a violation thereof, without the permission of the employer, would, ordinarily, be without redress; but it would seem unjust, and not in consonance with a proper administration of the law, to permit an employer to adopt a rule for the safety of the employé, and after tacitly consenting to its constant violation, in case of suit brought by an employé injured in the service while disregarding the rule, refuse to admit evidence tending to show that, in practice, there was no such rule, or that its violation was necessary to properly perform the service, or that it was abrogated or waived by the employer. We are aware that some cases hold that such evidence is not admissible, but the affirmative of this question appears to be sustained by sound reason and the weight of authority. In *Hunn* v. *Railway Co.*, 78 Mich. 513, Mr. Justice Champlin, delivering the opinion of the court, said: "We think it was competent to show what was usually and habitually done in the running of trains, because, if the company permitted or had so framed the rules as to require the employé to exercise some discretion in the matter of strict obedience, it ought not to be permitted to hold its employés to the very letter of the rule, in order to shield the company from liability for what it had tacitly permitted." So in *Railway Co.* v. *Nickels*, 1 C. C. A. 625, 50 Fed. 718, it is said: "This uniform and constant acquiescence of the defendant to the violation of this rule, if such a rule was really in existence, was a violation of the contract on the part of the defendant that it did not and would not acquiesce in the violation of any of its rules, and relieved plaintiff from further compliance therewith; and if, on the other hand, the rule was not really in force, if it had been waived or aban-

doned, the utter disregard of the rule, and defendant's acquiescence therein, were competent evidence of the abandonment. In either case the plaintiff had a right to rely on the conduct of the defendant, and to introduce his evidence in this behalf." Wood, Mast. & Serv. § 401; *Strong* v. *Railway Co.*, (Iowa) 62 N. W. 799; *White* v. *Railway Co.*, 72 Miss. 12; *Francis* v. *Railway Co.*, 127 Mo. 658; *Hissong* v. *Railroad Co.*, (Ala.) 8 South. 776; *Bonner* v. *Bean*, 80 Tex. 152.

The appellant also insists that the engineer and plaintiff were fellow servants, and that, if the injury was caused by the negligence of the engineer, the defendant was not liable. The jury were so instructed, and they were further instructed that no liability attached unless the "defendant alone was negligent," and "its negligence produced the injury." The instructions on this point were quite favorable to the defendant, and, in order to find a verdict for the plaintiff, the jury must have found that the defendant was negligent in not providing a fireman for the engine, and that such negligence was the proximate cause of the injury. In such event, if it were conceded that the engineer and plaintiff were fellow servants, and that the defendant is not liable for the negligence of the engineer, it cannot defeat the action, even if the engineer was also negligent, because where the negligence of an employer and that of a fellow servant combine and produce an injury to a servant, the employer will be liable in damages to the injured servant. While the employé who engages to perform a service assumes the risk of negligence on the part of a fellow servant, which the employer is unable to prevent, he does not assume any risk of negligence on the part of his employer. Shear. & R. Neg. § 187; *Railway Co.* v. *Cummings*, 106 U. S. 700; *Coppins* v. *Railroad Co.*, 122 N. Y. 557; *Railroad Co.* v. *Young*, 1 C. C. A. 428.

The only remaining question which we deem it neces-
sary to notice, although there are others raised in the
briefs of counsel, is that relating to damages and to the
verdict. The appellant contends that the jury were influ-
enced by passion or prejudice, and therefore awarded
damages which are grossly excessive. We think there is
merit in this contention. It is difficult to see how the
jury, under the evidence and in the instructions of the
court, as shown by the record, could arrive at the con-
clusion that $20,000 was a fair and reasonable compensa-
tion for the injury suffered. In its instructions to the
jury, the court, after stating the elements which entered
into the question of damages, said to them that, if they
found the issues for the plaintiff, then, from all the facts
and circumstances, they must determine what would be
just as matter of damages to him, purely as matter of
compensation, and then further instructed them that they
could take into consideration neither the wealth nor the
poverty of either the plaintiff or the defendant. The rule
as to the measure of damages was fairly stated to the
jury, and the law will not permit a corporation, any more
than an individual, to be mulcted in punitive or vindictive
damages, in a case like this. Nor will it permit any other
rule to be applied to a corporation than to an individual,
and yet it would seem almost impossible to believe that
the jury, under all the circumstances of this case, would
have returned such a verdict if the defendant had been a
private person instead of a corporation. Without at-
tempting to determine how this verdict was arrived at,
it is clear—almost beyond reasonable controversy—that
the rules of law laid down by the court as to the question
of damages, in its instructions, were disregarded; and it
is fair to assume that the court below so viewed the
action of the jury, because, upon hearing a motion there-

for, it ordered a new trial to be granted, unless the plaintiff would remit from the judgment which had been entered on the verdict the sum of $5,000; and the plaintiff himself must have entertained a similar view, or, at least, must have thought the verdict grossly excessive, when he remitted that sum. In their disregard of the instructions of the court, the jury committed a grave error, resulting in a verdict which is not warranted by the evidence. They were bound by the law as laid down by the court, whether right or wrong, and had no right to consult their own notions as to what the law ought to be. Therefore, when they departed from the instructions, they stepped beyond the limits of their power, and, in so doing, we must assume that they were influenced by some improper motives, or did it through a misapprehension of the facts and instructions.

Counsel for the respondent maintain that this court cannot disturb the verdict; that it has no power to review questions of fact; and that the amount of damages is a question of fact. They rely on article 8 of section 9 of the constitution of this state, which, in relation to appeals to the supreme court, contains the following provision: "In equity cases the appeal may be on questions of both law and fact. In cases at law the appeal shall be on questions of law alone." We do not think this provision of the constitution is applicable to this case, and therefore expressly refrain from an interpretation thereof. The cause was tried, judgment entered, notice of intention to move for a new trial served, statement on motion for new trial and appeal settled, and motion overruled, by the territorial district court, before the late territory of Utah became a state; and, under the constitution, in order that no inconvenience may arise by reason of a change from a territorial to a state govern-

·ment, all actions are continued the same as if no change had taken place; and, likewise, all laws not repugnant to the constitution are continued in force until they expire by their own limitations, or are altered or repealed. Article 24, §§ 1, 2. Therefore the territorial statutes applicable to the case continue in force on appeal, and hence this court may examine the evidence to ascertain whether or not the verdict and judgment are in excess of what, in justice, the plaintiff is entitled to recover, and then reverse, affirm, or modify the judgment, or direct a proper judgment to be entered. Comp. Laws Utah 1888, § 3006. Considering all the evidence and all the circumstances of the case, we conclude that the verdict and judgment are grossly excessive, and, under the facts and circumstances disclosed by the record, we do not regard it proper either to modify or direct what judgment should be entered, and thus substitute our judgment for that of the jury in this case. Where it is clear that in a case of personal tort, where the damages are unliquidated, or there is no legal measure of the same, and no definite amount shown, the jury have entirely misapprehended the facts, and committed substantial error in their application of the law to them, or, against the instructions of the court, have suffered prejudice or passion to mislead them, and thereby perpetrate an injustice by rendering a verdict greatly in excess of just compensation for the injury, a new trial ought to be granted. In the case at bar the jury were called upon to exercise reasonable discretion, obey the instructions of the court, and, upon a candid and fair consideration of all the facts and circumstances proven render a just verdict. That they failed to do this was practically admitted by the court below in requiring a remission of, and by the plaintiff in consenting to remit, a large portion

14 UTAH—26

of the judgment entered on the verdict. The fact that the plaintiff filed a remittitur at the instance of the court did not render the action of the jury unobjectionable, or cure the verdict, under the circumstances shown by the record. The same influences which resulted in such a verdict may have misled the jury in passing upon other questions of fact. The judgment is reversed, and remanded, with directions to grant a new trial.

Zane, C. J., and Miner, J., concur.