# Southern Railway Co. *v.* Bush.

*Action against Railroad Company to recover Damages for Alleged Negligent Killing of Person on Track.*

1. *Action against railroad for killing trespasser; sufficiency of complaint.*—In an action against a railroad company by the administrator of a person killed by an engine on defendant's track, a count of the complaint which alleges that plaintiff's intestate was struck and killed by a locomotive running on defendant's road, "and that defendant's servants and agents in charge of said locomotive were so situated that the perilous position of plaintiff's intestate was apparent to them, and they ought to have discovered it by ordinary care in ample time to have stopped said locomotive and avoided striking him, and that the servants of defendant negligently, carelessly and recklessly failed and neglected to stop said locomotive (which they could have done), but negligently allowed it to run against plaintiff's intestate," killing him, does not state a cause of action; the count averring only simple negligence on the part of defendant's servants, which imposes no liability for injuries to a mere traespasser, as the plaintiff's intestate must, under the averments, be held to have be_n.

2. *Same; same.*—In such an action a count of the complaint, which alleges that the defendant's servants or agents "negligently, carelessly and willfully" did the act complained of which resulted in the death of plaintiff's intestate, does not charge negligence so gross as to be the equivalent of willful wrong or intentional injury, but simple negligence merely.

3. *Duty of servants of railroad to keep lookout for trespassers.*—A railroad company is not bound to keep a look-out for trespassers on its track, and owes them no duty except the reasonable care to avoid injuring them; and this duty does not arise until the engineer or employé in charge of the locomotive

[Southern Railway Co. v. Bush.]

or train becomes actually aware of the danger to such trespasser.

4. *Same; when failure to use means to avoid injury not willful or intentional wrong.*—It is not until the engineer or other employé in charge of a locomotive on a railroad track becomes actually aware of the perilous position of a trespasser on the track, that his failure to exercise preventive effort to avert the injury can constitute such gross negligence as amounts to wantonness and recklessness; and, therefore, if acting in good faith and relying on the presumption, which he had a right to indulge, that the trespasser would seek a place of safety, it was not made apparent to the engineer that the trespasser did not intend to leave the track and thereby escape the threatening danger, until it was too late, by applying the preventive means at hand, to avoid the injury, the failure on the part of the engineer to put forth the effort to avert the accident would not be willfulness and wantonness equivalent to intentional wrong or willingness to inflict injury.

5. *Same; same; charge to jury.*—In an action against a railroad company to recover damages for killing plaintiff's intestate while on the track of defendant, where the evidence tends to show that the deceased was a trespasser upon defendant's track at the time of the accident, which occurred at a trestle, and saw the engine in time to get off the trestle and out of danger, but, instead of doing·so, attempted to cross the trestle in front of the approaching locomotive, a charge contains a correct proposition, which instructs the jury that if the engineer saw deceased at the end of the trestle, and it became apparent to him that the deceased saw the engine approaching, and was near enough to the end of the trestle to have gotten off and out of the way of danger the engineer would have· the right to presume that the deceased would do so, until by his conduct he showed that it was not his purpose to do so, "and it would be the duty of the engineer to begin to stop the engine only from the moment that the deceased's conduct made it reasonably manifest that he did not intend to get out of the way, or when, from deceased's position on the trestle, it became reasonably manifest that he could not reasonably extricate himself from the peril."

6. *Same; same; same.*—While wantonness on the part of an engineer in running over and killing a trespasser on the track can not be predicated on any thing short of his actual knowledge of the danger of the trespasser at the time of the injury, yet his actual knowledge need not be positively and directly shown, but may be shown by proving facts from which such

actual knowledge is a legitimate inference; and, therefore, a charge is properly refused, which instructs the jury that they are not authorized to infer that the engineer saw the deceased "merely from the facts that the track was straight for a long distance, and the view of the track unobstructed, and the engineer was in his seat looking ahead on the track, and that there was nothing to prevent the engineer from seeing a person on the track."

7. *Interrogatories for a discovery in a suit at law; construction of statute as to action under statute to prevent homicide.*—The damages recoverable in an action brought under the statute "to prevent homicide," (Code, § 27), are not, in a strict sense, a penalty, nor is the action penal or quasi criminal, within the meaning of the constitutional provision which forbids a person being compelled to answer questions when the answers would incriminate himself, and excuses a witness from testifying when his testimony would expose him to a penalty or forfeiture; and, therefore, in such an action against a railroad company, said constitutional provision furnishes no objection to the admission in evidence of the answers of the engineer, who was in charge of the locomotive that caused the death, in response to interrogatories propounded to the defendant filed for a recovery under the statute, (Code, § § 1850-58).

8. *Same; same; right of objection personal, and waived if not made by witness.*—The privilege of objecting to answering interrogatories propounded under the statute (Code, § § 1850-58), on the ground that the answers would subject the witness to a criminal prosecution, is a personal privilege, which is waived if not made by the witness himself, or some one authorized to protect his interest; and, therefore, in an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, when the plaintiff propounds interrogatories to the defendant for a discovery under the statute, and the engineer, who was in charge of the locomotive that inflicted the injuries, answers the interrogatories without objection, any privilege to object thereto is waived, and the defendant is not entitled to object on the trial when the answers are offered in evidence.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by E. L. Bush and J. W. Prewitt, as administrators of the estate of Ora L. Bush, deceased, against the Southern Railway Company; and

claimed $25,000 damages for the alleged wrongful killing of plaintiff's intestate, by being run over and crushed by a locomotive engine operated on the defendant's railroad by the defendant's employés. The complaint, as amended, contained fifteen counts. After demurrers were sustained to the several counts, the cause was tried upon the 1st, 10th, 12th, 14th and 15th counts. The 1st count was as follows: "The plaintiffs, E. L. Bush and J. W. Prewitt, as administrators of the estate of Ora L. Bush, deceased, claim of the defendant the sum of twenty-five thousand dollars damages for negligently causing the death of plaintiff's intestate, said Ora L. Bush, on, to-wit: the 22d day of December, 1895, by negligently, carelessly and willfully running over and upon said intestate, and striking him with a locomotive which defendants, its servants and agents then and there negligently, carelessly and willfully drove and ran along the line of defendant's railway at or near Sloss Furnaces, in the village of North Birmingham, Jefferson county, Alabama, and thereby, crushing, wounding and mangling said intestate so that by reason thereof, on said day, he died. And the plaintiffs aver that on said date, defendant was operating a line of railway, and propelling locomotives and cars thereon by means of steam, through said county, and running through the town or village located at and around said Sloss Furnaces, and that defendant's servants or agents on said day, were running a locomotive through said town or village, and carelessly and negligently and willfully and wantonly failed and neglected to blow the whistle or ring the bell of said locomotive while passing through said town or village, or at the crossings thereof, immediately before striking and killing said Ora L. Bush, as aforesaid. The plaintiffs aver that on the 22d day of February, 1896, they were duly appointed by the probate court of said county, administrators of the estate of said Ora L. Bush, deceased." The 10th count is copied in the opinion. The 12th count, after alleging the fact that the plaintiff's intestate was upon the track of the defendant on the middle of a trestle, where he was seen by the defendant's servants in charge of said locomotive, in ample time for them, by

the use of ordinary diligence, to have stopped said locomotive before reaching the trestle, then averred: "That it was apparent to the servants of defendant in charge of said locomotive that plaintiff's intestate could not get off of the trestle without being seriously hurt, and could not get out of the way of said locomotive, unless the same should be stopped before striking him. And that, notwithstanding that the perilous position of said Ora L. Bush was apparent to the servants and agents of de-, fendant in charge of said locomotive long before reaching him and striking him, and in ample time for said servants, by the use of ordinary care, to have stopped said locomotive before striking said Ora L. Bush, still said servants in charge of said locomotive negligently, carelessly, recklessly, willfully, and wantonly continued to run said locomotive along said track towards said Ora L. Bush, at a dangerous and rapid rate of speed, until said locomotive ran against said Ora L. Bush and killed him."

The 14th count was as follows: "The plaintiffs, E. L. Bush and J. W. Prewitt, as administrators of the estate of Ora L. Bush, deceased, claim of the defendant, the Southern Railway Company, a corporation, twenty-five thousand dollars damages, for that heretofore prior to and at the time of the grievances herein complained of, the defendant was operating a railroad for the transportation of freight and passengers by means of steam locomotive engines and cars, through the village of North Birmingham, Jefferson county, Alabama; that a stream runs through and divides said village which is known as Village Creek; that a trestle was constructed over and across said stream, on which the defendant operated its said railroad, said trestle being constructed over said stream in said village and being quite one hundred and eighty feet long, and eleven feet high. The population of said village averaged at the time of the commission of the said grievances, from three to four hundred inhabitants and lived on both sides of said creek and trestle, and the deceased was an inhabitant of said village. On 22d December, 1895, in the pursuit of the necessities of business and of the intercourse between the population

of said village, and in accordance with the custom or usage to cross said trestle as aforesaid, the deceased commenced to cross said trestle from the eastern to the western side of the same; and while deceased was crossing the same, the defendant, knowing the perilous condition of deceased and knowing that he could not extricate himself from such peril, without endangering his life or loss of limb, or incurring great bodily harm, wantonly, willfully or intentionally run its engine over deceased, and mangled him so that he died, because of such injuries, within three hours, hence this suit. Plaintiffs aver than on 22d February, 1896, they were appointed administrators of the estate of said Ora L. Bush, deceased, by the probate court of Jefferson county, Alabama." The 15th count was, in substance, the same as the 14th.

To each of the counts of the complaint, the defendant demurred upon the following grounds: "1. Because each of said counts fails to aver or show with sufficient certainty that the defendant, or its servants, were guilty of wantonly, willfully, or intentionally causing the death of plaintiff's intestate. 2. Because each of said counts fails to aver or show with sufficient certainty the facts or circumstances constituting the alleged wrongful conduct or omission of defendant or its servants. 3. Because each of said counts fails to aver or show with sufficient certainty that the wrongful acts or omissions complained of proximately caused the death of plaintiff's intestate." This demurrer to each of the counts was overruled, and the defendant duly excepted. The defendant pleaded the general issue and several pleas setting up contributory negligence. The plaintiff demurred to each of the several pleas setting up contributory negligence of plaintiff's intestate, upon the ground that in each count of the complaint the cause of action was predicated upon the alleged willful, intentional, wanton and reckless negligence on the part of the defendant, its servant and agents, and the plea of contributory negligence is no answer to such alleged negligence. The demurrer to each of the special pleas was sustained.

On the trial of the case the undisputed evidence showed that the deceased, Ora L. Bush, was a trespasser

on the track and trestle of the defendant's railroad, when and where he was struck by one of defendant's engines, in charge of defendant's engineer, George Bryan, and received injuries resulting in his death.

There was no positive evidence that the engineer saw the deceased on the trestle before striking him with the engine, except the evidence of George Bryan, the engineer, taken at the instance of the plaintiffs under the statute permitting examination of either party to a suit at law, by propounding written interrogatories. The substance of Bryan's evidence is in his answers to the 5th and 6th interrogatories propounded to the defendant. He said that when he first saw deceased, he appeared to be "near the end of the trestle and was walking towards the engine, with his face to the engine." The engine was running east and deceased was going west; the engine approaching the west end of the trestle. "At that time," he says, "my engine was about fifty yards from the west end of the trestle, and the trestle was about one hundred and twenty feet long."

The other witnesses who testified as to the length of the trestle, stated that it was about one hundred and eighty feet long, and one witness stated that its exact length was one hundred and seventy-eight feet.

George Bryan further testified that when he first saw deceased, he was where he could have gotten off the trestle without any trouble or danger, because he was then at the east edge of the trestle; that he, Bryan, had his hand on the throttle and was looking ahead, and that when the deceased saw the engine, he, Bryan, having blown the whistle to attract his attention, instead of getting off or turning back, ran towards the engine some distance, and stopped, during which time Bryan was doing all he could to stop the engine. Bryan testified in this connection as follows: "I reversed the engine, applied the brake, and gave her sand, and used all the means at hand to stop the engine." When deceased was struck, Bryan says he was still doing everything he could do to stop, but the outer corner of the pilot struck him and knocked him off. Bryan further stated, that his engine was going "about fifteen miles" an hour when deceased was first seen.

It was shown, without dispute, that the track was straight for about two hundred yards or more west of the trestle, and the view along the track unobstructed, and that it was broad daylight; and that the track was straight for some distance east of the trestle, and that the track was about level along there. There were no cars attached to the engine; only an engine and tender. The trestle was ten or twelve feet high, or, at highest point near the middle, fifteen feet high.

The evidence did not disclose definitely, where deceased got on the track, or what distance before getting on the trestle deceased had travelled on the track, except what the engineer testified, and it is not disputed, that Bush had not been on the track east of the trestle, and "he must have come on the track by a little path that comes up to the east end of the trestle, and on the east side of the track where there is a little embankment." The other facts of the case, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The charges to the jury, refused to be given at the request of the defendant, which are reviewed on the present appeal, are also stated in the opinion.

There were verdict and judgment for the plaintiffs, assessing their damages at $3,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SMITH & WEATHERLY, for appellant.—Wantonness and intention to do wrong can never be imputed to persons in charge of a locomotive engine, in running over a trespasser unless they actually know, *not merely ought to know*, the perilous position of the person on the track, and with such knowledge fail to resort to every reasonable effort to avert disastrous consequences.—*Glass v. M. & O. Railroad Co.*, 94 Ala. 581.

The demurrer to count No. 10 of the complaint, which was based on this proposition of law, should have been sustained. That count contains the averment that defendant's servants "ought to have discovered it [plaintiff's peril] by ordinary care in ample time to have

stopped said locomotive and avoided striking him at said crossing."

Knowledge on the part of defendant's engineer of the perilous position, or presence of the deceased, cannot be inferred merely from the facts that the track was straight for a long distance, and the view of the track unobstructed, and that the engineer was looking ahead on the track, and that there was nothing to prevent him from seeing a person on the track. This is the proposition contained in charge No. 11, requested by the defendant, and which was refused.—*Ga. Pac. R. R. Co. v. Ross,* 100 Ala. 490; *Nave v. Railroad Co.* 96 Ala. 264.

If the want of care of deceased, in getting upon and attempting to cross the trestle under the circumstances of this case, proximately caused his death, such fact would leave no room for a wanton or intentional wrong on the part of the defendant's servants. Wanton or intentional wrong, inflicting injury in such case, arises only in the last stage of peril arising after the peril of the trespasser has been discovered; in which event the negligence of deceased becoms only remotely contributory to the actual injuries sustained.—*Tanner, Executor, v. L. & N. R. R. Co.,* 60 Ala. 621-638. Charge No. 15, requested by the defendant, was based on this proposition.

The legal propositions embraced in charge No. 25, requested by the defendant, have been frequently declared, and have become established law in this State.—*L. & N. v. Black,* 89 Ala. 313-317; *L. & N. v. Markee,* 103 Ala. 173; *Bowers v. B'ham Ry. & El. Co.,* 110 Ala. 328; *Ga. Pac. Ry. Co. v. Ross,* 100 Ala. 490; *Stringer v. Railroad,* 99 Ala. 397; *Railroad Company v. Womack,* 84 Ala. 149.

The last paragraph of said charge No. 25, namely, "But the engineer, acting in good faith, and with reasonable promptness, might delay using such preventive effort until too late to avoid the collision, in which event the railroad would not be liable," is clearly a correct conclusion from the circumstances set forth in the preceding part of the charge.—*Markee's Case, supra; R. R. Co. v. Black,* 89 Ala. *supra; R. R. Co. v. Blakely,* 59 Ala. 471.

[Southern Railway Co. v. Bush.]

The answers filed by defendant to plaintiff's interrogatories, which answers were made by George Bryan, the engineer in charge of the engine, taken under and in conformity wit hthe statutes, (sections 2816-2822 of the Code, as amended by the Acts of 1888-89, page 121), at the instance of the plaintiffs, should not have been allowed in evidence, and the objections of the defendant thereto should have been sustained.—6 Encyc. of Pl. & Pr., page 743, sub-div. b, notes 2 and 3; *Ib.* page 793, notes 6, 7, 8, and 9; *Ib.* page 794, note 1.

Interrogatories to parties in civil suits, under the statute (sections 2816 *et seq.*) are governed by the same rules that apply to bills of discovery in chancery, so far as relate to the nature of the discovery sought and the effect of the answers as evidence.—*Wilson v. Maria,* 21 Ala. 361; *Grymes v. White,* 37 Ala. 549-550; *Saltmarsh v. Bower,* 22 Ala. 221.

JOHN J. MOORE and DENSON & TANNER, *contra.*—The demurrer to count No. 10 of the complaint was properly overruled; because it was averred in the count that the defendant's servants, or agents, in charge of said locomotive, were so situated that the perilous position of plaintiff intestate was apparent to them in ample time to have stopped said locomotive and avoided striking him. Knowledge on the part of defendant's engineer cannot be inferred from any fact short of actual knowledge shown by positive evidence.—*Ga. Pac. R. R. Co. v. Ross,* 100 Ala. 490.

The 25th charge requested by the defendant was properly refused, the proposition of law contained therein being incorrect.—*Cen. R. R. Co. v. Vaughan,* 93 Ala. 209; *Frazer v. S. & N. Ala. R. R. Co.,* 81 Ala. 185.

The answers of the engineer to the interrogatories which had been propounded by the plaintiff to the defendant were properly admitted in evidence.—*Goodwin v. Harrison,* 6 Ala. 438; *Pool v. Harrison,* 18 Ala. 515; *Ex parte Grantland,* 29 Ala. 69; *Ex parte McClendon,* 33 Ala. 276; *Allen v. Lathrop-Hatton L. Co.,* 90 Ala. 490; *M. & O. R. R. Co. v. Searles,* 100 Ala. 368.

TYSON, J.—Ora L. Bush, the intestate of the appellees, while a trespasser on a railroad trestle of the appellant, was struck by a locomotive engine, operated by an engineer in the employment of the appellant, and received injuries from which he died. The overruling of the demurrer to the tenth count of the complaint is the only error assigned in relation to the pleadings. This count as amended is in the following words: "Planitiffs further claim of defendant the sum of twenty-five thousand dollars, damages, for that whereas, heretofore, on to-wit: the 22d day of December, 1895, defendant was engaged in operating a line of railway in Jefferson county, Alabama, along which locomotives and cars were propelled by means of steam, and that on said date last above, plaintiffs' intestate, said Ora L. Bush, was struck and wounded by a locomotive of defendant, while said locomotive was running along the line of defendant's road, and was so injured, crushed and mangled that he died within a few hours and on the same day, and that defendant's servants or agents in charge of said locomotive were so situated that the perilous position of intestate was apparant to them and they ought to have discovered it by ordinary care in ample time to have stopped said locomotive and avoided striking him, and that the servants of defendant negligently, carelessly and recklessly failed and neglected to stop said locomotive (which they could have done) but they negligently allowed it to run against plaintiff's intestate and crush, wound, mangle and kill him," etc. This count charges nothing more than simple negligence. The only word it contains upon which the inference can in the remotest degree be based for the contention that it involves the charge of willfullness or wantonness is the word "*reckless.*" Had the language been employed "that the servants of defendant *recklessly*" (omitting the words negligently and carelessly) in connection with that which follows, the result would be the same. "The word has a wide range of meaning. In its milder sense it may imply mere inattention to duty—thoughtlessness—indifference, carelessness, negligence; or import a heedless disregard of obvious consequences. * * * The de-

[Southern Railway Co. v. Bush.]

gree of recklessness which will avoid the defense of contributory negligence is such as implies a willingness or a purpose to inflict the injury complained of—a consciousness that the unwarranted conduct will inevitably or probably lead to wrong and injury. In charging recklessness in general terms, no more is necessarily implied than such mere negligence, thoughtlessness or inadvertence as could not be regarded as the equivalent of intentional wrong and which, therefore, would be insufficient to overcome the defense of contributory negligence. · A plea of contributory negligence cannot be regarded as presenting no defense because recklessness is charged in the complaint, unless it appears from the averments of the complaint that the recklessness charged amounted to more than mere negligence. There is nothing in the averments of the second count of the complaint in this case to show that the word was used in the harsher sense. * * * The averments of the complaint by no means necessarily import that the objectionable act of the foreman was willful."—*Kansas City, Memphis & Birmingham Railroad Co. v. Crocker*, 95 Ala. 433.

The second count referred to in the quotation above was very similar in its language to the one under consideration. Its allegations were that on a day specified "said car was being propelled at a rapid rate of speed" at a certain place on the defendant's track, "under the charge and control of said foreman, and plaintiff was working the lever at the forward end of said car under the direction of said foreman; and said foreman negligently, carelessly and recklessly, applied the brakes to the wheels of said car with great force and suddenness, without warning or signal, whereby the speed of said car was suddenly and violently checked and plaintiff was violently thrown from said car," etc.

The count of the complaint under consideration is silent as to the location upon the track of the injury, whether at a public crossing or at some other point where the deceased had the right to be upon the track for the purpose of crossing it, and therefore no duty is shown by its averments resting upon the defendant's servants not to injure him except not to injure him after

becoming actually aware of his peril. For aught that appears by the complaint, plaintiff's intestate might have been rightfully on the track when he was struck by the defendant's locomotive; in which case it would be liable to his personal representatives for the want of care on the part of its employés whereby the fatal injury to him was inflicted; or he may have been wrongfully on the track and hence a trespasser, in which case no mere negligence, such as is alleged in the count, on the part of the employés would have sufficed to impose a liability upon the defendant. "And on the familiar rule which requires that construction, when two or more constructions are possible, of pleadings which is most unfavorable to the pleader to be put on his averments, this count must be held to allege that a trespasser on defendant's track was fatally injured through simple negligence on the part of defendant's servants. This did not sufficiently present a cause of action," and the demurrer to it should have been sustained.—*Montgomery's Extrs. v. Ala. Gr. So. R. R. Co.*, 97 Ala. 305; *Ensley Railway Co. v. Chewning*, 93 Ala. 24.

The cause appears to have been tried upon the first, tenth, twelfth, fourteenth and fifteenth counts and the plea of the general issue; demurrers having been sustained to the pleas of defendant invoking the defense of contributory negligence to these counts. Count one charged no more than simple negligence. It is true it contains the word "willfully," but it is preceded immediately by the words "negligently and carelessly" and connected with them by the conjunction "and." The averments of this count are fairly within the influence of what has been recently said by this court in the case of *Louisville & Nashville Railroad Co. v. Orr, Admr. etc.* 121 Ala. 489, where such an allegation is shown to be repugnant, and that construction most unfavorable to the pleader must be adopted. Furthermore, the facts alleged upon which the "willfulness" is predicated would constitute no more than simple negligence.

The intestate being a trespasser on the trestle of defendant's track, it is thoroughly well settled law, that it owed him no duty except the exercise of reasonable

care to avoid injuring him, and this duty arose, not necessarily at the moment he was seen on the trestle by its employés, but at the moment the peril of his position became known to them. The latter owed no duty to deceased to keep a lookout for trespassers on the trestle, and it was not until the engineer became actually aware of his danger, that the failure to exercise preventive effort to avert the injury could constitute such gross negligence as amounts to wantonness and recklessness, as is alleged in the complaint, proof of which was neces sary to overcome the effect of the contributory negligence of the deceased and authorize a recovery.—*Glass v. M & C. R. R. Co.*, 94 Ala. 588; *Central R. R. & B. Co. v. Vaughan*, 93 Ala. 209; *Nave v. A. G. S. Railroad Co.*, 96 Ala. 264; *Georgia Pacific Railway Co. v. Blanton*, 84 Ala. 154; *Carrington v. L. & N. Railroad Co.*, 88 Ala. 472. If at the time the engineer first saw deceased on the trestle, the latter's position was such that he could readily, and without risk of injury, have stepped off to a place of safety, and thereby escaped being struck by the engine, the engineer had a right to presume that he would do so, and to act on the presumption until it became apparent to him that deceased was ignorant of his danger, or for some reason could not, or would not, extricate himself from it. And if at the time the actual circumstances, brought to the knowledge of the engineer, made it apparent to him that the deceased did not intend to leave the trestle, it was then too late to apply successfully the preventive means at hand to avoid the injury, willfulness and wantonness, equivalent to an intention or willingness to inflict injury, cannot be imputed from a failure to stop the engine.—*L. & N. R. R. Co. v. Black*, 89 Ala. 313. The mere failure to do an act which, if done, might or would have avoided the injury, does not necessarily constitute the omission an intentional or willful wrong. It is manifest that there may be circumstances attending peculiar cases which make the ascertainment of the moment when the position of a trespasser on the track becomes one of peril to himself, or of the precise moment when it becomes necessary for the engineer to apply the means at hand to avoid the injury, a matter

of judgment and quickness of decision, and also make good faith on the part of the engineer in exercising due care to apply the preventive means, after his mind has grasped the emergency, and his judgment has warned him to act, an element to be considered in determining whether his failure to stop the train and avoid the injury was willful and wanton. The trespasser may come upon the track so suddenly, or, being on the track, may act in a manner so unexpected and so different from that of a rational human being, and the manifestation of his real peril and the catastrophe may be so close in point of time that only an engineer of more than ordinary quickness of decision and accuracy of judgment and rapidity of mental as well as physical action, can grasp the situation and apply preventive effort before it becomes too late. And hence the circumstances may be such that the engineer, if he acts in good faith and with reasonable care, cannot be charged with willfulness and wantonness merely because of his failure to do an act which would have avoided the injury.—*L. & N. R. R. Co. v. Markec,* 103 Ala. 171.

It was with these principles in view, doubtless, that defendant requested charge 25, which was refused by the court. The charge reads: "If the engineer saw Ora L. Bush at or near the east end of the trestle, as some of the evidence tends to show, but it also became apparent to the engineer that Bush saw the engine approaching, and was near enough to the east end of the trestle to have readily gotten off and out of the way of danger, the engineer would have had a right to presume that Bush would get off and out of the way of danger, until by his conduct he showed that it was not his purpose to do so, and it would be the duty of the engineer to begin to stop the engine only from the moment that the deceased's conduct made it reasonably manifest that he did not intend to get out of the way, or when, from deceased's position on the trestle, it became reasonably manifest that he could not reasonably extricate himself from the peril; but the engineer, acting in good faith and with reasonable prudence, might delay using such preventive effort until too late to avoid

the collision, in which event the railroad company would not be liable." There was a tendency of the evidence, arising chiefly from the testimony of the engineer, but aided by that of other witnesses for plaintiff, which, we think, justified this charge, and rendered its refusal by the trial court error. According to this tendency of the evidence, when the engineer first saw deceased on the trestle the engine was 150 feet from the west end of the trestle, which was from 120 to 180 feet in length, and the deceased was at the east end, walking towards the engine, having come into view on the trestle suddenly from a side path that ran up to the east end of the trestle. The engineer immediately blew the whistle, which attracted the attention of the deceased, and caused him to see the engine approaching. He was then at the east end of the trestle where he could have gotten off without trouble or danger, but instead of getting off, he commenced to run across the trestle *directly in the face of the engine.* After running towards the engine for some distance he stopped, paused a moment, and then went back two or three steps to a bent cap on the trestle. During this time, while the deceased was running towards the engine, the engineer did all he could to bring the engine to a stop, having shut off the steam, reversed the engine, applied the vacuum brake, and used sand, but was unable to stop before reaching deceased, who was struck by the outer corner of the pilot and knocked off. The engine had a tender attached, but no cars, and was running at a speed of from fifteen to twenty-five miles an hour at the time deceased was first seen on the trestle, and could have been stopped within a distance of from 100 to 250 feet. There was evidence tending to support this charge in all its hypotheses. Assuming the truth of these facts, as the jury might have done, the engineer might innocently and reasonably have delayed preventive effort until it was too late to avoid the injury, without being guilty of willfulness and wantonness, the equivalent of intentional wrong or willingness to sacrifice human life. The distance between the engine and deceased, when the latter was first seen, was from 270 to 330 feet, and the engine was running from 22 to

36 feet per second. When the deceased was first seen, being in such a position on the trestle that he could have readily gotten off and out of the way of danger, the engineer had a right to act on the presumption that he would do so, and therefore owed him no duty to stop the engine immediately.—*Central R.R.& B. Co. v. Vaughan*, 93 Ala. 209. The unexpected—not reasonably to be anticipated—conduct of the deceased, in attempting to run across the entire length of the trestle in the face of the engine, the engineer could not foresee. He blew the whistle to warn deceased of his danger, attracted his attention thereby to the approaching engine, and then deceased concluded to try to run the length of the trestle, from 120 to 180 feet, while the engine was running 150 feet. The blowing of the whistle, the recognition by the deceased of its meaning and of his danger, and the forming of this conclusion in his mind, and his starting to accomplish his purpose, and the realization by the engineer of his intention, so unusual under such circumstances—all these things could not have happened in an instant of time, and during the interval the engine was running at a speed of from 22 to 36 feet a second. Until the engineer actually realized that deceased intended to run across the trestle, no duty devolved on him to try to stop the engine. How many seconds elapsed between his first motion to blow the whistle and his realization of this intention of deceased? If five seconds, and if the trestle was 120 feet in length, and the speed of the engine was 36 feet a second, the engine ran 180 feet before it became the duty of the engineer to make any effort to stop it, and was then within less than 90 feet of deceased, a distance within which, according to the evidence, it was impossible to stop. These considerations lead us to conclude that the facts hypothesized in the charge, considered in connection with this tendency of the evidence, justified the last clause of the charge— "but the engineer, acting in good faith and with reasonable prudence, might delay using preventive effort until too late to avoid the collision, in which event the railroad company would not be liable."

The defendant requested the court to charge the jury,

that they were not "authorized to infer that the engineer saw Ora L. Bush on the trestle merely from the facts that the track was straight for a long distance, and the view of the track unobstructed, and the engineer was in his seat looking ahead on the track, and that there was nothing to prevent the engineer from seeing a person on the track." While wantonness on the part of the engineer cannot be predicated on the mere fact that he ought to have seen deceased on the trestle, or on any-thing short of actual knowledge, yet this actual knowledge need not be positively and directly shown, but, like any other fact, may be proved by showing circumstances from which the fact of actual knowledge is a legitimate inference. Otherwise, in cases of this character, this fact could never be proved except by the testimony of the engineer himself. Certainly the facts that the road was straight for a long distance, the view of the track unobstructed, and the engineer was in his seat *looking ahead along the track,* and there was nothing to prevent him from seeing a person on the track a few hundred feet ahead, are relevant and admissible for the purpose of proving that he did see such person, and may properly be submitted to the jury on this issue; and while no presumption arises from these facts that the engineer did see the person on the track, yet this may be inferred from these facts by the jury, whose province alone it is to decide the weight to be given to facts legally in evidence and their effect on an issue which they are admitted to prove. A contrary conclusion was apparently reached in *Ga. Pac. R'y Co. v. Ross,* 100 Ala. 490, solely upon the authority of the previous case of *Nave v. A. G. S. R. R. Co.,* 96 Ala. 264. An examination of the latter case, however, does not sustain this conclusion, since the evidence in that case did not show that the engineer *was looking ahead along the track,* and all that was there decided was, that inasmuch as it was not the duty of the engineer to keep a lookout for a person on the track, the fact that he could have seen him if he had looked did not author-ize the inference that he did look and see him. We are of the opinion that this charge was properly refused.— *Birmingham Railway & Electric Co. v. Smith,* 121 Ala. 352.

The plaintiff propounded to defendant interrogatories for a discovery, under the provisions of the statute (Code of 1896, § § 1850-1858), answers to which were made by the engineer. When these answers were offered in evidence by the plaintiff, defendant objected to their introduction on the ground that defendant could not, in a proceeding of this character, be legally and constitutionally compelled to answer the interrogatories. The argument is, that the damages recoverable in this action, instituted under the provisions of the act entitled "An act to prevent homicides"—now forming section 27, Code of 1896—providing that a personal representative may maintain an action for the wrongful act or omission or negligence of any person, whereby the death of his testator or intestate was caused, are in the nature of a penalty; and that the defendant in such actions is protected, both by the rules applicable to discoveries, and by constitutional guaranty, against any compulsory process to compel him to answer any questions, the answers to which would have a tendency to incriminate him, or to expose him to a penalty or a forfeiture. The Supreme Court of the United States has held that proceedings for penalties and forfeitures are within the provisions of the fifth amendment to the federal constitution that no person shall be compelled in a criminal case to be a witness against himself; and that this provision is a protection against compulsory self-disclosure in any proceeding, civil or criminal, of matters which tend to incriminate the witness, or to expose him to a penalty or forfeiture.—*Counselman v. Hitchcock,* 142 U. S. 547; *Boyd v. United States,* 116 U. S. 616. While the decision of this court is entitled to great weight as authority in the construction of similar provisions in the constitutions of the several States, it is not binding on the State courts, because the fifth amendment to the federal constitution has no application to proceedings in the State courts.—*Thorington v. Montgomery,* 147 U. S. 490. These constitutional provisions, thus construed, simply declared the ancient rule of the common law, and prohibited any change in the rule by legislation. It is also an ancient and universal rule that a court of equity will

not entertain a bill to compel a discovery in aid of an action to recover a penalty or forfeiture, or of any action not purely of a civil nature.—2 Story Eq. Jur., § 1494. And the construction given to our statutory provisions for a discovery at law is, that they created a right to a discovery in civil suits at law which, in the absence of statute, could be obtained only in equity.—*Cain Lumber Co. v. Standard Dry Kiln Co.,* 108 Ala. 346. If the damages recoverable in an action of this character were, strictly speaking, a penalty imposed by law, we would be inclined to give to our constitutional provision on the subject the same construction that has been placed on the similar provision of the federal constitution, and to hold that the defendant could not be compelled, even by statute, to give or furnish evidence in aid of a recovery against it. But while the damages recoverable are undoubtedly, under our former rulings, punitive in their nature, and not compensatory, they are not, in a strict sense, a penalty, nor is the action penal, or quasi-criminal, within the meaning of the constitutional provisions as above construed. The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before, as to "prevent homicides," and the action given is purely civil in its nature for the redress of private, and not public wrongs. See *Richmond & D. R. R. Co. v. Freeman,* 97 Ala. 289. The question presented is, therefore, one of statutory, and not of constitutional construction, and in this aspect it was considered and decided adversely to appellant's contention in *L. & N. R. R. Co. v. Hall,* 91 Ala. 118, where it was held that the only exception allowed by the statute, with respect of the nature of the interrogatories required to be answered by the party, was that contained in section 1858, which provides that "the party is bound to answer all pertinent interrogatories, unless by the answer he *subjects himself to a criminal* prosecution." It cannot be contended that the defendant corporation could be subjected to a criminal prosecution on account of these answers, and as no objection was made by the engineer, or by any one authorized to represent him, he must be treated as having waived any privilege to which he may

have been entitled. The privilege is purely a personal one, and can be claimed only by the witness, or by some one authorized to protect his interests, and unless so claimed is waived. The trial court did not err in overruling the objection to the introduction of these answers.

The other assignments of error relating to the evidence are not insisted upon or discussed by counsel in their brief. We have examined each of the assignments, however, and fail to discover any error committed by the court in the admission of evidence.

For the errors pointed out, the judgment must be reversed and the cause remanded.

NOTE: The foregoing opinion was partly prepared by Chief Justice BRICKELL before his retiring from the bench.