J. Y. WHITLOW *v.* NASHVILLE, CHATTANOOGA & ST.
LOUIS RAILWAY COMPANY.

(*Nashville.*    December Term, 1904.)

1. **FOREIGN STATUTES.** Rights of action under statutes of
other States enforced here.
    The courts of this State have the power to enforce, and con-
    stantly do enforce, rights of action granted under foreign stat-
    utes or statutes of other States. (*Post, p.* 348.)

    Cases cited and approved: Railroad v. Sprayberry, 8 Bax., 341,
        and 9 Heis., 852; Hobbs v. Railroad, 9 Heis., 873; Railroad v.
        Foster, 10 Lea, 351; Railroad v. Lewis 89 Tenn., 235; Railroad
        v. Reagan, 96 Tenn., 128, 136, 137.

2. **SAME.** Same. Must be pleaded and the remedy prescribed
    must be pursued.
    But in such cases, where the right of action is unknown to the
        common law, the foreign statute must be pleaded, and the rem-
        edy prescribed by it must be pursued. (*Post, p.* 348.)

    Cases cited and approved: Railroad v. Sprayberry, 9 Heis., 852,
        854; Railroad v. Foster, 10 Lea, 351, 359, 365; Railroad v.
        Reagan, 96 Tenn., 128, 136, 137.

3. **SAME.** Same. But penal statutes of another State will not be
    enforced here.
    But no State will enforce the penal laws of another State impos-
        ing punishment for offenses committed against the State, and
        not merely affording redress for wrongs to the individual.
        (*Post, pp.* 348-350.)

    Cases cited and approved: Huntington v. Attrill, 146 U. S., 657;
        Wisconsin v. Insurance Co., 127 U. S., 265.

Whitlow v. N., C. & St. L. Ry. Co.

4.  **SAME. Whether the statute of another State is penal is to be
    determined by the trial court.**

    In determining whether a statute of a foreign State or of another
    State is penal, so as to deny jurisdiction to the courts of this
    State in which an action thereon is brought, our courts are not
    absolutely bound by the construction placed upon such statute
    by the courts of the State which enacted it, but this is to be·
    determined by the court in which the suit is brought. (*Post,*
    *p.* 350.)

    Case cited and approved: Huntington v. Attrill, 146 U. S., 657.

5.  **SAME. Personal injury statute of Alabama enforced here.**

    The statute of the State of Alabama, giving a right of action for
    personal injuries resulting in death, is not a penal statute in
    the sense that will prevent the courts of this State from enter-
    taining an action based thereon. (*Post, pp.* 350-355.)

    Numerous cases in Alabama and other cases are cited in the
    opinion on pages 350-354.

6.  **SAME. Same. Personal injury statute of Alabama is not so
    repugnant to our policy as to prevent its enforcement here.**

    The right of action for personal injuries resulting in death,
    given by the statute of Alabama, is not so repugnant to the
    public policy of our State as to prevent an action based thereon
    in the courts of our State. ·(*Post, pp.* 355-357.)

    Cases cited and approved: Dennick v. Railroad, 103 U. S., 593;
    Railroad v. Cox, 145 U. S., 593; Huntington v. Attrill, 146 U.
    S., 657; Railroad v. Babcock, 154 U. S., 190; Stewart v. Rail-
    road, 168 U. S., 445, 448, 449; Herrick v. Railroad, 31 Minn., 11.

7   **SAME. Same. Enforcement of personal injury statute of
    Alabama will not be refused for dissimilarity between it and
    our statute.**

    Our courts will not decline, in a proper case, to entertain an ac-
    tion for personal injuries resulting in death based on the stat-
    ute of Alabama, because of dissimilarity between its provisions

Whitlow v. N., C. & St. L. Ry. Co.

as to damages, and those of our own statute upon the same subject. (*Post, pp.* 348, 357-359.)

8. **REVERSAL.** Where verdict is so excessive, as to evince passion, prejudice, or caprice.

The constitution of our courts is such, and the relation between the court and the jury is of such a character, under our laws, that the trial judge has always, and the supreme court on appeal has always, the power to set aside verdicts on the ground that the amount found is so large as to evince passion, prejudice, or caprice, and such seems to be the rule in Alabama. (*Post, pp.* 359, 360.)

Cases cited and approved: Railroad v. Mallette, 99 Ala., 209, 217, 218; Furniture Co. v. Little, 108 Ala., 399; Railroad v. Burgess, 119 Ala., 555, 564, 565.

---

FROM MARION.

---

Appeal from the Circuit Court of Marion County.— S. D. McREYNOLDS, Judge.

STEWART & STEWART and CHARLES C. MOORE, for Whitlow.

SPEARS & SPEARS and CLAUDE WALLER, for Railroad.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Marion county to recover damages for the wrongful death of one

John Whitlow, who it is alleged was killed on the line of the defendant's railway in the town of Bridgeport, in the State of Alabama. The action is based upon section 27 of the Code of 1896 of that State. It also appears as section 2589 of the Code of 1886. The original act on which these sections were based was passed on the 5th of February, 1872. The statutory provision above referred to reads as follows:

"A personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission or negligence, if it had not caused death; such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for such wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate."

Two points were made by the defendant in the court below on this statute, and both were sustained, and as a result of sustaining these objections the plaintiff's act-

ion was dismissed. We need not state with particularity the method by which the points were raised. It need only be said that they were sufficiently presented.

From the action of the court below the plaintiff appealed, and the matter is now before us for consideration.

The first point made is, in substance, that the statute of Alabama above referred to is a penal statute, and being so, cannot be enforced in the courts of this State. The second is that the statute of Alabama under which this suit is instituted and the statute of Tennessee giving a right of action in case of wrongful death are so dissimilar in their purposes and enforcement that the courts of Tennessee will not undertake to enforce the Alabama statute.

1. The courts of this State have the power to enforce, and constantly do enforce, rights of action under foreign statutes. *R. R.* v. *Sprayberry,* 8 Baxt., 341, 35 Am. Rep., 705; Id., 9 Heisk., 852; *Hobbs* v. *R. R.,* 9 Heisk., 873; *R. R.* v. *Foster,* 10 Lea, 351; *R. R. Co.* v. *Lewis,* 89 Tenn., 235, 14 S. W., 603; *R. R.* v. *Reagan,* 96 Tenn., 128, 136, 137, 33 S. W., 1050. But in such cases, where the right of action is one unknown to the common law, the foreign statute must be pleaded, and the remedy prescribed by it must be pursued. 9 Heisk., 852, 854, 96 Tenn., 128, 136, 137, 33 S. W., 1050; 89 Tenn., 235, 14 S. W. 603; 10 Lea, 351, 359, 365.

2. But no State will enforce the penal laws of another State. Penal laws, however, strictly and properly

are those imposing punishment for an offense commit-
ted against the State.   The test whether a law is penal
is whether the wrong sought to be redressed is a wrong
to the public or a wrong to the individual.  *Huntington*
v. *Attrill,* 146 U. S., 657, 13 Sup. Ct., 224, 36 L. Ed.,1123.
In that case it is said, quoting with approval from *Wis-
consin* v. *Pelican Insurance Company,* 127 U. S., 265, 8
Sup. Ct., 1370, 32 L. Ed., 239:

"The rule that the courts of no country execute the
penal laws of another applies not only to prosecutions
and sentences for crimes and misdemeanors, but to all
suits in favor of the State for the recovery of pecuniary
penalties for any violation of statutes for the protection
of its revenue or other municipal laws, and to all judg-
ments for such penalties."   Again:   "For the purpose
of extraterritorial jurisdiction it may well be that act-
ions by a common informer, called, as Blackstone says,
'popular actions, because they are given to the people in
general,' to recover a penalty imposed by statute for an
offense against the law, and which may be barred by a
pardon granted before action brought, may stand upon
the same ground as suits brought for such a penalty in
the name of the State or of its officers, because they are
equally brought to enforce the criminal  law  of  the
State." Again, it is said:   "The question whether a stat-
ute of one State, which in some aspects may be called
penal, is a penal law in the international sense, so that
it cannot be enforced in the courts of another State, de-
pends upon the question whether its purpose is to pun-

ish an offense against the public justice of the State, or
to afford a private remedy to a person injured by the
wrongful act."

3. In determining the question, whether a statute of
a foreign State is penal in the international sense, so as
to deny jurisdiction to the tribunals of a foreign State
in which an action thereon is brought, such tribunals
are not absolutely bound by the construction placed
upon such statutes by the courts of the State which en-
acted it. "The test," said the court, in *Huntington* v.
*Attrill,* supra, "is not by what name the statute is called
by the legislature or the courts of the State in which it
was passed, but whether it appears to the tribunal which
is called upon to enforce it to be, in its essential charac-
ter and effect, a punishment of an offense against the
public, or a grant of a civil right to a private person. In
this country the question of international law must be
determined in the first instance by the court, State or
national, in which the suit is brought."

4. The right of action given by the Alabama statute
sued on in this case is not a penal one in the internation-
al sense of the term.

It is true that in construing this statute, or a prior
one of similar purport, the supreme court of Alabama
has held that it is not necessary to aver that the intes-
tate left a widow, children, or next of kin (*Railway Co.*
v. *Waller,* 48 Ala., 459); and that evidence of loss of
services, or mere pecuniary loss is immaterial and irrel-
evant (*Railroad Co.* v. *Freeman,* 97 Ala., 289, 11 South.,

800; *Railroad Co.* v. *Shearer,* 58 Ala., 672; *Buckalew* v. *Ry. Co.,* 112 Ala., 146, 20 South., 606; *Railway* v. *Burgess,* 116 Ala., 509, 22 South., 913) ; and that evidence as to age, physical and mental condition, and earning capacity, and occupation of plaintiffs' testator or intestate and the amount of money contributed by him from his earnings to the support and maintenance of those dependent upon him, is immaterial and incompetent (*Railroad Co.* v. *Tegner,* 125 Ala., 593, 28 South., 510). It is also true that the court in several opinions (*Railroad Co.* v. *Shearer,* supra; *Railroad Co.* v. *Sullivan,* 59 Ala., 279; *Railroad Co.* v. *Freeman,* supra), has referred to the damages to be assessed under the statute as "a pecuniary mulct," "a punishment or fine," against the wrongdoer, to be distributed by the administrator as personal property. Yet no one can read the foregoing authorities, and other decisions of the supreme court of Alabama on cases arising under this statute (*Tanner's Ex'r* v. *Railroad Co.,* 60 Ala., 621; *Railroad* v. *Copeland,* 61 Ala., 376; *Cook* v. *Railroad Co.,* 67 Ala., 533; *Railroad Co.* v. *Womack,* 84 Ala., 149, 4 South., 618; *Bentley* v. *Railroad Co.,* 86 Ala., 484, 6 South., 37; *Railroad Co.* v. *Black,* 89 Ala., 313, 8 South., 246; *Leak* v. *Railroad Co.,* 90 Ala., 161, 8 South., 245; *Railroad Co.* v. *Vaughan,* 93 Ala., 209, 9 South., 468, 30 Am. St., Rep. 50; *Railroad Co.* v. *Meadors,* 95 Ala., 137, 10 South., 141; *Railroad Co.* v. *Dobbs,* 101 Ala., 219, 12 South., 770; *Railroad Co.* v. *Martin,* 117 Ala., 367, 23 South., 231; *Railroad Co.* v. *Bush,* 122 Ala., 470, 26

South., 168; *Armstrong* v. *Street Railway Co.*, 123 Ala., 233, 26 South., 349; *Shannon* v. *Jefferson County*, 125 Ala., 384, 27 South., 977; *Railroad Co.* v. *Foshee*, 125 Ala., 199, 27 South., 1006; *Railroad Co.* v. *Bryan*, 125 Ala., 297, 28 South., 445; *Railroad Co.* v. *Mitchell*, 134 Ala., 261, 32 South., 735; *Railroad Co.* v. *Hamilton*, 135 Ala., 343, 33 South., 157; *Railroad Co.* v. *Shelton*, 136 Ala., 191, 34 South., 194; *Railroad Co.* v. *Guest*, 136 Ala., 348, 34 South., 968; *Railroad Co.* v. *Crenshaw*, 136 Ala., 573, 34 South., 913; *Bryant* v. *Railroad Co.*, 137 Ala., 488, 34 South., 562) as a series, and note the questions that were stated and discussed in them without being convinced that these cases were ordinary damage suits, brought to recover for a wrongful death inflicted by the defendant upon the intestate or testator of the plaintiff, and for the benefit of the estate of the person so killed; that the only difference, in respect of damages between these suits and others brought to recover for a wrongful death inflicted—as for example, for the death of an employee (for cases of this character, see *Railroad Co.* v. *Bridges*, 86 Ala., 449, 5 South., 864, 11 Am. St. Rep., 58; *Williams* v. *Railroad* Co., 91 Ala., 635, 9 South., 77; *Railroad Co.* v. *Orr*, 91 Ala., 548, 8 South., 360; *Railroad Co.* v. *Mallette*, 92 Ala., 209, 9 South., 363; *James* v. *Railroad Co.*, 92 Ala., 231, 9 South., 335) resides in the facts that, while in the class of cases last referred to the jury are furnished by the court with rules of approximate certainty for measuring the damages, in cases arising under the statute sued on in the present case they are left somewhat at large, with no

more certain guide than that they must consider all of the circumstances of the occurrence eventuating in the death complained of, for the purpose of ascertaining and determining the degree or extent of the negligence, if any, of the defendant, and upon such consideration they must assess damages to such amount or in such sum as to them may seem a just retribution for the injury in such manner inflcited, ranging from nominal damages upwards according to or proportioned to the degree of culpability; and, further, that the terms "mulct," and "punishment," and "fine," used in some of the decisions referred to, do not in these decisions, bear the meaning attached to them in the domain of criminal law, and were not intended to be so understood by the supreme court of Alabama.

Forcible confirmation of this conclusion is found in the language used by that court in *Railroad Co.* v. *Bush* supra, 122 Ala., 488, 489, 26 South., 173, 174.

In that case it appeared that the plaintiff below propounded to the defendant interrogatories for a discovery under the provisions of Code 1896 (Ala.) sections 1850-1858, answers to which were made by the engineer. When these answers were offered in evidence by the plaintiff, defendant objected to their introduction on the ground that defendant could not, in a proceeding of this character, be legally and constitutionally compelled to answer the interrogatories. The ground of objection offered by the defendant was that the action was

penal in its nature, and that in such actions the defendant is protected both by the rules applicable to discoveries and by constitutional guaranty against any compulsory process to compel him to answer any questions the answers to which would have a tendency to incriminate him, or to expose him to a penalty or a forfeiture. After noting that the supreme court of the United States (*Counselman* v. *Hitchcock,* 142 U. S., 547, 12 Sup. Ct., 195, 35 L. Ed., 1110; *Boyd* v. *United States,* 116 U. S., 616, 6 Sup. Ct., 524, 29 L. Ed., 746), had held that proceedings for penalties and forfeitures were within the provisions of the fifth amendment to the federal constitution that no person shall be compelled in a criminal case to be a witness against himself, and that this provision was a protection against compulsory self-disclosure in any proceeding, civil or criminal, of matters tending to incriminate the witness, or to expose him to a penalty or forfeiture, the court proceeded:

"If the damages recoverable in an action of this character were, strictly speaking, a penalty imposed by law, we would be inclined to give to our constitutional provision on the subject the same construction that has been placed on the similar provision of the federal constitution, and to hold that the defendant could not be compelled, even by statute, to give or furnish evidence in aid of a recovery against it. But while the damages recoverable are undoubtedly, under our former rulings, punitive in their nature, and not compensatory, they are not, in a strict sense, a penalty; nor is the action penal,

or quasi criminal, within the meaning of the constitutional provisions as above construed. The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before as to 'prevent homicides,' and the action given is purely civil in its nature for the redress of private, and not public, wrongs." The objection was accordingly overruled.

What is here said in the quotation just made is the logical result of all the preceding Alabama cases on the subject, when one goes to the very substance of them, disregarding mere formal expressions; and it is impossible, in the face of this decision, to hold that actions under the statute are penal in the international sense.

5. The action is not so repugnant to the public policy of our State as that we should, for that reason, decline to entertain it. The bringing and disposition of suits for damages caused by wrongful death is a matter of everyday occurrence in the courts of this State. And as said by Mr. Justice Brewer in *Stewart* v. *Baltimore & Ohio Railroad Company,* 168 U. S., 445, 448, 449, 18 Sup. Ct., 105, 106, 42 L. Ed., 537: "A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim *'Actio personalis moritur cum persona,'* damages therefor could have been recovered in an action at common law. The case differs in this important feature from those in which a penalty is imposed for an act in itself not wrongful, in which a purely statutory delict is created. The purpose of the several statutes passed in the States in more or less conformity

to what is known as 'Lord Campbell's Act' is to provide the means for recovering the damages caused by that which is essentially and in its nature a tort. Such statutes are not penal, but remedial, for the benefit of the persons injured by the death. An action to recover damages for a tort is not local, but transitory, and can, as a general rule, be maintained wherever the wrongdoer can be found. *Dennick* v. *Central Railroad Co.,* 103 U. S., 11, 26 L. Ed., 439. It may be well that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued; but where the statute simply takes away a common-law obstacle to a recovery for an admitted tort it would seem not unreasonable to hold that an action for that tort can be maintained in any State in which that common-law obstacle has been removed. At least it has been held by this court in repeated cases that an action for such a tort can be maintained where the statute of the State in which the cause of action arose is not, in substance, inconsistent with the statutes or public policy of the State in which the right of action is sought to be enforced"—citing *Texas & Pac. Ry. Co.* v. *Cox,* 145 U. S., 593, 12 Sup. Ct., 905, 36 L. Ed., 829; *Dennick* v. *Central Railroad Co.,* 103 U. S., 11, 26 L.Ed., 439; *Huntington* v. *Attrill,* supra; *Northern Pac. Ry. Co.* v. *Babcock,* 154 U. S., 190, 14 Sup. Ct., 978, 38 L. Ed., 958.

In the case last cited, the court, speaking through Mr. Justice White, quoted with approval the following

language from *Herrick* v. *Minneapolis, etc., St. L. R. Co.*, 31 Minn., 11, 16 N. W., 413, 47 Am. Rep., 771, which we also adopt, viz.: "But it by no means follows that, because the statute of one State differs from the law of another State, therefore it would be held contrary to the policy of the laws of the latter State. Every day our courts are enforcing rights under foreign contracts where the *lex loci contractus* and the *lex fori* are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the State where made. To justify a court in refusing to enforce a right of action which accrued under the law of another State, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens."

6. Nor will the court decline to entertain the action because of dissimilarity between the provisions of the Alabama statute and those of our own upon the same subject.

As we understand the Alabama law, the statute sued on in this case covers all rights of action for damages on account of wrongful death except those wherein the representatives of an employee sue the employer who has caused his death; recovery for this latter class of damages falling under another statute. Of course, under a statute so broad many questions must arise, based upon the reciprocal relations, rights, and duties of the

respective parties, which must be considered and disposed of in determining, in the first instance, the existence of a cause of action, and, secondly, the degree of negligence or culpability. The same, and even greater, diversity is discovered in the operation of our own statute, since it prescribes a remedy for all cases of wrongful death, without distinction in respect of the relations of the parties. And even a greater diversity is experienced by all courts in administering contracts both domestic and foreign. But it is not on these grounds that the able counsel of the defendant place their objection. The dissimilarity complained of, other than that already considered and disposed of, is in respect of the measure of damages. It is said that while, under our statute, the mental and physical suffering of the deceased, his loss of time, and expense on account of the injury, also evidence of age, physical condition, earning capacity, and expectation of life, may all be considered. Under the Alabama statute none of these are admissible, but the amount of damages is to be assessed upon a general and particular view of all of the circumstances attending the injury, and proportioned to the culpability disclosed upon a comparison of such facts and circumstances with the measure of duty imposed by law upon the defendant in the situation shown by the evidence, and the ascertainment of the breach of such duty, and the extent of it—in short, upon the degree of negligence proven in the cause—and that such sum is to be asses-

sed for this negligence a the jury may deem adequate punishment therefor.

We do not think that Tennessee courts and juries will find any more difficulty in administering this rule than is experienced by the tribunals of our sister State. It is quite as difficult (and more uncertain in results) to ascertain how much should be allowed in a given case for mental and physical suffering as to fix a sum that shall approximately measure in money the degree of culpability shown by a defendant guilty of negligence. Moreover, the tribunals of this State have long applied the substance of the Alabama rule in the reverse aspect in measuring the degree of culpability of a plaintiff whose contributory negligence, in a certain well-known class of cases in this State, does not bar the action, but only mitigates the damages. In this class of cases the juries are, in substance, instructed to consider and estimate the the degree and extent of the plaintiff's negligence, and to abate his recovery by such amount as they may deem just in view thereof.

7. We should add that we do not understand that under the Alabama statute the jury are left to unrestrained action in fixing the amount of the recovery, but that they are subject to the overruling discretion of the court, in case it should be of opinion that the amount found is so large as to evince passion, prejudice, or caprice; since it is laid down as a general principle (in *Furniture Co.* v. *Little,* 108 Ala., 339, 19 South., 443, and see *Railroad Co.* v. *Burgess,* 119 Ala., 555, 564, 565,

25 South., 251, 72 Am. St. Rep., 943; *Railroad    Co.    v. Mallette,* 92 Ala., 209, 217, 218, 9 South., 363, 365, 366) that punitive damages are in the discretion of the jury, but only within "reasonable limits."    At all events, the constitution of our own courts is such, and the relation between the court and the jury are of such a character, under our laws, that the trial judge has always, and this court on appeal always, the power to set aside verdicts on the ground above stated; and every cause of action to which the hospitality of our tribunals is extended must be understood as so qualified, inasmuch as we cannot alter the constitution of our courts for   their entertainment.

It results that there is error in the action of the court below in dismissing the plaintiff's suit, and the cause is remanded for proper issue and further proceedings.